## Jennings v. Commonwealth.

(Decided June 16, 1931.)

630

ALLEN R. KINCHELOE and JESSE R. ESKRIDGE for appellant.

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Sam Jennings, a negro, was indicted, tried, and convicted in the Breckinridge circuit court for the crime of rape, and by verdict of the jury and judgment of the court his punishment was fixed at death. He has appealed, and the grounds relied on for reversal are: (1) That the court erred in directing the sheriff to summon bystanders to complete the jury when the regular panel had been exhausted; (2) that the verdict is flagrantly against the weight of the evidence.

Out of the regular panel, six jurymen qualified and were accepted. Counsel for appellant then moved the court to draw from the jury wheel a list sufficient to complete the jury, but the court overruled this motion and directed the sheriff to summon bystanders who possessed the necessary qualifications as prescribed by statute to complete the jury.

Section 2247, Ky. Statutes, in part provides:

"If, in any criminal or penal cause or proceeding called for trial, the panel shall be exhausted by challenge, the judge may suppy such jurors by drawing from the drum or wheel case, or may direct the sheriff to summon for the trial of that cause any

number of bystanders or persons to fill such vacancies.''

In the case of Leadingham v. Commonwealth, 182 Ky. 291, 206 S. W. 483, 484, the court after referring to that part of section 2247, Ky. Statutes, above quoted, said: ''Independent, however, of any construction of the statute and of the merits of the question presented, we are prevented from considering it because of the provisions of section 281 of the Criminal Code of Practice. That section is: 'The decisions of the court upon challenges to the panel, and for cause, or upon motions to set aside an indictment, shall not be subject to exception.' '' The constitutionality of section 281 of the Code was attacked in Lake v. Commonwealth, 209 Ky. 832, 273 S. W. 511, but its constitutionality was upheld.

The section of the statute in question authorizes the summoning of bystanders where the regular panel is exhausted, as it was in this case; but as was pointed out in the Leadingham Case, this court would be precluded by section 281 of the Criminal Code of Practice even if the lower court had erred in this particular.

The second ground, and the one on which appellants' counsel seem to base their chief reliance, calls for a review of the evidence. We deem it unnecessary to go into a detailed statement of all the evidence, as a statement of the salient facts as developed by the proof will be sufficient in determining the questions presented for consideration.

Miss Mabel Downs, the victim of the alleged crime, is a white woman about 23 years of age who lives with her father on his farm about two miles from the town of Hardinsburg. She had some character of employment in that town and made daily trips to and from her work, usually walking and unaccompanied. In going from Hardinsburg to her home, she would follow the Stephensport highway for about one mile, but after crossing the bridge over Hardins creek would turn to the right and follow a wagon trail and footpaths through some fields and woodland. Immediately after leaving the highway, her path led through a small plot of newly cleared land in which one Mr. Whitfied and others cultivated a tobacco crop in the year 1930. Adjacent to this cleared land is a small area of woodland which is something over 300 yards from the highway and somewhat secluded.

About 5 o'clock, on the 6th day of October, 1930, as the prosecuting witness was following the path through this timberland, she discovered a negro standing near a cedar tree. When she saw him, she stopped and he then approached with a shotgun pointed toward her. She started to back away and he commanded her not to run. She procured a club and struck him over the head. He immediately grabbed her and threw her to the ground. She testified that she screamed and fought and resisted him to the extent of her strength, but that he choked her and overcame her resistance. In the meantime, he had told her in language too coarse and vulgar to admit repetition that he intended to accomplish his purpose or kill her. She stated that he carried out his purpose.

Without going into details, her evidence as to the acts of her assailant tends to establish every necessary element of the crime for which appellant stands convicted. On securing a promise that she would not tell what had occurred, her assailant, with a threat to kill her if she did tell, permitted the victim to continue to her home.

Miss Downs did not know her assailant at the time, but from her description of him and the manner of his dress, suspicion seemed to fall on appellant. He was arrested and when confronted by the prosecuting witness was recognized by her as the man who had made the assault. She testified that the man who assaulted her had a mustache and wore leggings and a cap. A number of witnesses testified to having seen appellant going out the Stephensport road late in the afternoon of October 6, and these and other witnesses testified that he was wearing leggings, a cap, and carried a gun.

Mrs. Henning, whose home is on the Stephensport road facing the clearing to which we have referred, testified that about 5 o'clock of the afternoon in question she heard about six screams coming from the direction of the woodland back of the clearing and she recognized the voice as that of a woman.

The evidence shows that the neck of the prosecuting witness was bruised and swollen after the alleged attack, but that the clothing she was wearing was not injured except for a small tear near the neck of her dress.

Appellant testifying for himself denied that he assaulted Miss Downs and stated that he did not know her previous to the time of his arrest. He testified as to

his whereabouts during the afternoon and evening of October 6th and in many particulars was corroborated by other witnesses. He admitted, however, that in the afternoon in question, he went out the Stephensport road between 5 and 6 o'clock, but stated that he turned to the left before reaching Hardins creek and went to a spring on the farm of Mr. Wall for the purpose of killing a groundhog which he knew used to be about the spring. He stated that he returned to Hardinsburg about 6 o'clock.

It is earnestly argued by appellant's counsel that at most the evidence only tends to establish an attempt to commit the crime for which appellant was convicted. This argument is based on the evidence as to the physical condition of the prosecuting witness and the condition of her clothes after the assault, as shawn by her own evidence and the evidence of Dr. W. P. Kinchloe, who made an examination of her on the morning following the assault.

Miss Downs testified that there was no injury to her genital organs and no soreness resulting from the assault, and Dr. Kinchloe, who was called as a witness for appellant, testified that he found no injury of the genital organs and no rupture of the hymen. He testified that partial penetration was possible without causing any such injuries or rupture. On both direct and cross examination Miss Downs was positive in her statements that there was a penetration and that she knew the meaning of that term.

It is pointed out in appellant's brief that she was contradicted by the evidence of Allen Jennings, the town marshal, who testified that shortly after Miss Downs was assaulted, he asked her if her assailant accomplished his purpose and she replied in the negative. He later testified, however, that at the time he was talking to Miss Downs, they were in an automobile with others, driving over a very rough road, and that due to noise made by the car, she may have misunderstood his question and that it was possible that he misunderstood her reply.

Unfortunately for appellant, a jury composed of citizens of his own county and in whose selection he and his counsel had a part accepted the evidence of the witnesses for the commonwealth rather than the evidence offered in his behalf and thus arrived at the verdict rendered. It is true that the punishment to be meted out under this verdict is the most severe known to our

law, but it is not too severe for the crime charged in the indictment, and the jury was warranted in rendering such a verdict if by the evidence they were convinced of the guilt of the accused.

The credibility of witnesses and the weight to be given their evidence are, peculiarly, matters to be determined by a jury, and this court is not authorized to disturb the finding of the jury on these matters unless such verdict is so flagrantly against the weight of the evidence as to shock the conscience and to leave little or no escape from the conclusion that it resulted from passion and prejudice. No principle of law is more firmly established or better recognized in this and other jurisdictions. Tackett v. Commonwealth, 229 Ky. 312, 17 S. W. (2d) 241; Jones v. Commonwealth, 230 Ky. 24, 18 S. W. (2d) 287; Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190; Adams v. Commonwealth, 227 Ky. 255, 12 S. W. (2d) 275; Oldham v. Commonwealth, 228 Ky. 307, 14 S. W. (2d) 1065.

From the record in this case, it appears that the trial was conducted in an orderly manner and was unusually free from error. Two able attorneys were appointed to defend appellant, and they discharged every duty owed to him and rendered the best possible service under the circumstances. As the record does not disclose any error prejudicial to appellant's substantial rights, and there being ample evidence to support the verdict, it should not be disturbed.

Judgment affirmed.

Whole court sitting.