## Pitts et al. v. Commonwealth.
(Decided Nov. 8, 1935.)

SHUMATE & SHUMATE for appellants.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The two appellants, Buford Pitts and Garret Crow, were jointly indicted with Andrew Johnson by the grand jury of Estill county, in which they were charged with one of the offenses denounced by section 1166 of our present Kentucky Statutes (1934 Supp.), i. e., that of willfully and maliciously shooting at Charlie Jones without wounding him, and which occurred on the night of December 25, 1934, when defendants were assembled together at a place some thirty or forty yards from Jones' residence. At the trial Pitts and Crow were convicted and punished by confinement in the penitentiary for one year each, but Johnson was acquitted, and this is an appeal by the convicted defendants in the indictment in which they seek a reversal of the judgment upon the two grounds that (1) the verdict is flagrantly against the evidence, and (2) error in instruction No. 1, given by the court to the jury, each of which will be determined in the order named.

1. The first intimation of the presence of the defendants so near Jones' residence was brought home to him by a conversation in which they engaged where they were located near his house, and in which some threats were made against him and profane language concerning him was employed. He recognized the voices of Pitts and Crow, both of whom he had known for many years and possibly throughout their lives; they having been reared and having lived in his immediate neighborhood. The record discloses some bad feeling, or at least animosity, on the part of Pitts and Crow towards Jones because of the latter's prior activities with reference to the enforcement of the liquor laws of the commonwealth in that community, and which probably was the cause of the vile names which one or perhaps both of them applied to Jones during the period covered by their alleged violations. It was also proven that Pitts some months before had stated to a witness who testified for the commonwealth that, "There was only one man he wanted to kill and that was Charlie Jones," but which was denied by Pitts. Jones testified that some time before the alleged shooting he was in company with Pitts and Crow when the former accused him of turning up a still, which Jones denied, and Pitts then said to him: "You are a G—— d—— liar." Witness then stated that some time after dark on the occasion in question he was in his house with his sick wife and two infant children when he heard Pitts say: "Come out

you G—— d—— long-legged s—— of a b——''; where-
upon, having no weapon at his house, he made his exit
therefrom and went to the home of a neighbor and pro-
cured a gun (the kind of which is not stated); that while
he was gone he heard a shot from the locality occupied
by defendants when he left his house. Upon his return
from his neighbor's house, he spoke to the three de-
fendants and asked them what they meant. At the same
time he told them that his wife was sick in bed and that
she was "not able to put up with no such as this," when
Pitts said: "By G——, we aint either," and com-
menced shooting, whereupon he (Jones) did likewise,
that the shots from the crowd, the flashes of which he
saw, were directed towards him, and that one bullet
struck a lard can sitting in his yard but a few feet from
him.

After witness had fired two shots, defendant Crow
said, according to witness: "By G—— I am on my own
premises and I will go home and get a shot gun and kill
every one of you"; that soon thereafter Crow returned
and hollered out: "Go call the law" some three or four
times, and then a shotgun was fired into his house, into
which Jones had returned in the meantime; that, when
that shot was fired, the discharge threw dust from the
plastering as well as knocked some of it off of the walls
of the room. His testimony was corroborated in the
main by that of Mrs. Jones, and, if the testimony given
by those two witnesses, to say nothing about other cor-
roborating facts and circumstances, is and was true (as
the jury evidently concluded), there would seem to be
no foundation for the contention embodied in ground
(1) relied on for a reversal.

Defendants in the indictment denied engaging in
any shooting on the occasion testified to by the prose-
cuting witnesses. They admit congregating at the place
stated by those witnesses, as well as engaging in some
of the angry conversation and threats which Jones and
wife testified to, but they denied that either of them
had any weapon of any kind, and, of course, denied that
either of them fired any shots either at Jones or other-
wise. They accounted for the explosions to which
Jones and others testified by saying that they were pro-
duced by firecrackers which Crow had purchased on
that afternoon and had distributed some of them to his
other two companions. But the testimony of defendants
themselves give no reason why they selected a spot off

the public road near Jones' residence at which to celebrate the approaching holiday by the explosion of firecrackers. They also gave a somewhat hazy reason for their being at that place at that time. After the shooting (or following the first two occasions of it and just preceding the firing of the shot gun into the house), Johnson went into the residence of Jones and stated, in substance, that he (Johnson) was his friend. At that time he was very much intoxicated and had along with him a bottle in which there was yet some liquor. However, Pitts and Crow both say that neither of them had imbibed any liquor on that afternoon, nor did they see Johnson with any, although the proven circumstances would strongly indicate that such denials by them were untrue. Clearly, under the testimony as so portrayed, ground (1) cannot be sustained, and we will consume neither time nor space in its further discussion.

2. In its instruction No. 1, the court told the jury to convict the defendants if they believed that they shot at Jones, in the manner described by the statutes, and furthermore authorized a conviction if the jury believed that one or more of them engaged in the shooting and that the other or others were present and near enough to and did aid, abet, assist, counsel, and encourage the one so shooting to do so. We have uniformly held that one charged as a principal in the commission of a felony may be convicted only as an aider and abetter of another principal who is likewise charged as such in the indictment and that it is not necessary for that to be done that the indictment should specifically accuse the convicted aider and abetter of his participation only as such. The only requisite to such conviction as aider and abetter is that a principal should be jointly accused with him in the indictment, or at least a principal should be named in the indictment as the one actually perpetrating the crime. In substantiation thereof we need refer only to the two recent cases of Hogan v. Commonwealth, 230 Ky. 680, 20 S. W. (2d) 710, and Cooksey v. Commonwealth, 235 Ky. 454, 31 S. W. (2d) 703, in the opinions in which many other domestic cases to the same effect are collated. Jones could not tell which particular defendant fired the shots at him and at his house, but he positively stated that one of them did, and it was shown that the others were then and there present and were participating in, or had immediately theretofore engaged in the unfriendly threats and vi-

tuperative language emanating from the trio. Under the circumstances, it is perfectly apparent that the court committed no error in giving the instruction complained of.

Wherefore the judgment is affirmed.