# Russell v. Commonwealth.

Dec. 16, 1938.

MILBY & HENDERSON for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-
LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirm-
ing.

The appellant, Harold Russell, has appealed from
a verdict and judgment of the Green Circuit Court sen-
tencing him to two years in the penitentiary for man-
slaughter.  The indictment charged him with willful
murder of Pete Hatcher.

Grounds urged in the brief of appellant for a re-
versal of the judgment are (a) the evidence is insuffi-
cent to sustain a conviction and the court erred in fail-
ing to peremptorily instruct the jury to find appellant
not guilty; and (b) the court erred in instructing the
jury on self-defense and voluntary manslaughter.

(a) There were no eye-witnesses to the homicide
and the evidence is wholly circumstantial.  It appears
that decedent was killed about dark or just before dark
on the evening of May 1st, 1937, and his body was found
in the early afternoon on the following day, lying beside
or near a public road about 200 yards from appellant's
house, and near a gate on appellant's premises.  De-
cedent had been shot in the head with a twenty-gauge
shotgun and the wadding was found in the wound in the
head of deceased.  Upon investigation of the homicide
by the sheriff and others, there was found in appellant's
home a twenty-gauge shotgun and some twenty-gauge
shells or shotgun cartridges with No. 6 shots and these
were the same size shots and wadding found by the doc-
tors in the wound in decedent's head.  There were sev-
eral families living in the community near the place
where the homicide occurred or where decedent's body
was found and, according to the evidence of these
neighbors, about dark on Saturday, May 1st, a gun shot
was heard at or about the location or direction of ap-
pellant's home, and at about the same time the witnesses
heard some hollering or crying like someone in distress
and this appeared to be near appellant's home or be-
tween his home and his father's home.  About five or six
minutes before the shot and disturbances were heard by

the witnesses, deceased was seen in the neighborhood traveling toward appellant's house. Appellant appeared at a neighbor's home which was near appellant's home, at about dark on that Saturday evening just after the shot and other disturbance was heard, and he appeared to be intoxicated and nervous and talked incoherently. Appellant claimed that he was looking for one of his pigs which had escaped from the pen but the witness said he was unable "to get much sense out of what he said about a pig or hog being out."

The only motive attempted to be shown by the Commonwealth was that some time previous to the homicide deceased and Ray Murell, who testified for the Commonwealth, passed through appellant's gate referred to above, and left it open. Appellant, who was at his home, noticed the gate having been left open and cautioned deceased and Murell about leaving the gate open, and told them the next time they came through the gate to be sure to close it because his calves would get out.

The strongest circumstance shown in the record tending to connect appellant with the homicide is that concerning the shotgun, ammunition, wadding, etc., found in appellant's home which corresponded exactly to the wadding and shots found in deceased's head, and appellant's own evidence concerning the shotgun. Appellant admitted that he owned the shotgun and it is not shown that anyone else in that immediate vicinity owned a shotgun of the same caliber. A number of witnesses were asked if they knew of anyone in that immediate vicinity who owned a twenty-gauge shotgun and they all said that they knew of none; nor, does appellant himself claim that anyone else in that community owned a twenty-gauge shotgun. The sheriff who examined the shotgun and ammunition found in appellant's home, testified that the gun had been cleaned, and appellant testified that he had used the gun the day before the homicide but said he had not cleaned the gun since he had it, although he had owned it two and a half or three years.

The difference between the condition and appearance of the interior of the barrel of a firearm that had not been cleaned for two and a half or three years, although had been used during that time, and one that has been cleaned since last used, is a matter so commonly known by all people who have had experience in handling firearms that it would be unreasonable to believe

that the sheriff could have been mistaken in his judgment that the gun had been cleaned since last used. The jury had the right to and perhaps did infer that if appellant shot deceased he immediately cleaned the gun barrel so that if he should be suspected and the gun examined it would not bear evidence of having been recently used. Also, appellant's testimony that he did not hear the shot and other disturbance heard by so many other people in the community, some of whom were a farther distance away from the location of the disturbance than appellant was, is inconsistent with the circumstances and physical facts. Appellant testified that when he went home just before dark the family was eating supper but he immediately went to feed his hogs, but before leaving the house he whipped two children, one of his own and one of his brother, the children being five and seven years of age respectively. He said that the children cried and screamed and that is the only crying or screaming that he heard on that evening. Some witnesses who were a quarter of a mile away heard the crying and screaming, and it is hardly consistent to believe that these small children cried and screamed so loud as to have been heard a quarter of a mile away. Mrs. Frank Russell who was a quarter of a mile away, said she heard the crying and screaming just after the shot was fired and she was positive it was not children's voices.

With reference to motive the evidence is very weak. But since deceased's body was found near the gate through which he had previously passed and had been told by appellant to be sure to close the gate next time he passed through it, the jury might have inferred from these circumstances that deceased on the occasion in question was using or attempting to use the same gate and a controversy arose between him and appellant regarding the use of the gate, and resulted in the homicide. However this might be, it was a question for the jury to give this evidence such weight, if any, they may see proper.

Appellant admitted that he had taken several drinks of whiskey on that evening and was intoxicated. It is commonly known that an intoxicated man is likely to commit an offense or do an act without any particular motive or reason, that he would not commit or do when sober.

While it is true that proof of motive is usually an important element where the evidence is circumstantial, but it is not absolutely necessary that motive be proved. The commission of a crime may be established where the evidence is otherwise sufficient, without showing motive, and this is particularly true in the present case, since the jury found appellant guilty of manslaughter only, which necessarily means that defendant was not guilty of premeditated murder prompted by any previous malice or motive, but shot deceased in sudden heat and passion.

Appellant relies upon the case of Daniel v. Com., 170 Ky. 693, 698, 186 S. W. 489. But we do not think that case is sufficient to support appellant's position in the present case, since it was merely held in the case, supra, that threats alone without further proof was not sufficient to establish the commission of the crime. It is the well-known rule to which this court adheres in the trial of criminal prosecutions, that where there is any evidence, direct or circumstantial, tending to connect the accused with the crime and tends to prove his guilt, the issue of guilt or innocence should be submitted to the jury for its decision, and that the finding of the jury will not be disturbed by the court unless the evidence is so meager as to clearly warrant the inference that the verdict of the jury is result of prejudice and passion.

Appellant denied that he killed deceased or had any connection therewith. He introduced other witnesses most of whom were members of the Russell family, all of whose testimony is favorable to appellant. According to their evidence appellant was at the Russell home at about the time the shot and disturbances were heard. However, this conflict in the evidence was a question for the jury, which it had the right to weigh and measure, as against the evidence produced for the Commonwealth, and give to the evidence of each side such credit as it may see proper.

Under the proven facts and certain well connected circumstances it is our view that there is sufficient evidence of a substantive and probative character not only to take the case to the jury, but also it is sufficient to sustain the verdict.

(b) It is next insisted that the court should have instructed the jury on murder alone and that the manslaughter instruction afforded the jury an opportunity

to bargain and compromise on a verdict of manslaughter, whereas there was no probability of the jury having found appellant guilty of murder, and had the jury no alternative it would have acquitted appellant rather than find him guilty of murder under the evidence. In support of this argument the case of Kelly v. Com., 259 Ky. 770, 83 S. W. (2d) 489, is relied on. Under the evidence in that case, we held that appellant was guilty of murder or nothing, and that a voluntary manslaughter instruction should not have been given. In the present case the evidence is stronger than that in the case, supra. It is our view that the proven facts and circumstances shown in the present case are sufficient to warrant a voluntary manslaughter instruction. It is shown that deceased had a deadly weapon on his person, and the screaming, hollering and disturbance heard at about the time the shot was heard might warrant the inference that there was a controversy or struggle between the parties. We do not think the court erred in instructing the jury on voluntary manslaughter.

Judgment affirmed.

The whole court sitting.