# Gambrel v. Commonwealth.

Sept. 27, 1940.

Flem D. Sampson, Judge.

Hiram H. Owens and V. A. Jordan for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

Opinion of the Court by Sims, Commissioner—Affirming.

The Grand Jury of Knox County jointly indicted Orange, Lath and Viola Gambrel and Maude Baker for the wilful murder of N. A. Jones. The first count in the indictment charged all four of the defendants with shooting deceased, and a second count charged Orange with the actual shooting and the other three with aiding and abetting him in the killing. A separate trial was given Orange which resulted in his conviction of manslaughter, and his punishment was fixed at ten years' confinement in the penitentiary. He seeks a reversal of the judgment entered on the verdict because: (1) The verdict is flagrantly against the evidence; (2) an aider and abettor should not be convicted on a separate trial after the principal has been acquitted; (3) the court erroneously instructed the jury.

The killing occurred on the highway between Barbourville and Corbin between four and five o'clock in the afternoon of June 13, 1939. Jones was between sixty and seventy years of age, his wife was dead and he was living with a seventeen year old girl, Cleo Baker, a niece of his deceased wife, a niece of Lath Gambrel's wife and a grand-daughter of H. R. Fry. Jones and Cleo left their home between seven and eight o'clock on the morning of the killing in a wagon with the intention of going to Speed Campbell's stock pen to buy a calf. Jones was drinking and took two pistols and a sawed off shotgun with him. He went to Campbell's slaughter pen, remained there only a few minutes, and bought no calf. Upon returning from Campbell's place, Jones and Cleo stopped at the home of Lath Gambrel, where they remained until around noon. Orange was unmarried,

made his home a part of the time with his brother, Lath, and was there on this occasion. There was evidence that a good bit of liquor was consumed by all present that morning at Lath's.

Around noon Jones and Cleo went to the home of her grandfather, H. R. Fry, which was only several hundred yards from Lath's home. Lath, his wife and Maude Baker drove over to the home of Fry, who was the father of Maude and of Lath's wife, and while returning, their car went dead on a hill leading from Fry's place to the highway. There had been some words between Maude and her daughter, Cleo, concerning the latter living in an unmarried state with Jones. Cleo and Jones were quite intoxicated and while Maude, Lath and his wife were in the car which was dead on the hill, Jones gave Cleo a pistol and she shot five times at her mother. However, Cleo was at such a distance from her mother that none of the shots carried to the car. This was some thirty minutes or an hour before the killing occurred.

Lath, his wife and Maude deserted the car and went to Lath's home. Jones sent Jesse Baker, a young son of Maude, to Lath's house with the message that if the car was not moved out of the road he would shoot the top off of it. Upon receiving this word, Lath and Orange got their shotguns and went up to move the car. Jones drove up in his wagon, pulled around the car and at the request of the Gambrels, hitched the car to his wagon with a chain and pulled it to the highway. Nothing unpleasant passed between Jones and the Gambrels while he was pulling their car over the hill.

While the car was being pulled by the wagon the engine started, and upon reaching the highway the car and wagon proceeded in opposite directions. However, the car ran only about fifty yards, again went dead, stopping on the edge of the highway with two wheels on the berm and two on the concrete. The Gambrel boys started working on the car and Lath's wife, Viola, and Maude came from his home to the car, a distance of about 150 yards. Something was said between Maude and her daughter, Cleo, who was in Jones' wagon 133 steps from the car. Whereupon they alighted from the wagon and started towards the car, Jones telling Cleo: "Beat hell out of them, I'll stand by you 'til death."

Maude and Cleo went to fighting while Viola tried to separate them.

The Commonwealth's version of the shooting is that as Jones reached the Gambrel car, Lath and Orange each drew a shotgun on him, making him put up his hands; one of them struck at him, Jones staggered back and just as he straightened up he was shot in the mouth and chin with a shotgun, and as he fell Jones shot Lath in the left hip with a pistol. Lloyd Williams, who was passing the scene in a truck, is the only witness for the Commonwealth who actually saw the shooting, although several of the Commonwealth witnesses looked up just after they heard the shots fired and saw both Lath and Jones fall. There was only a second or two between the two shots, which were all that were fired. Frank Eve was on his porch, 250 or 300 yards from the place of the shooting, and while willows obstructed his view of the shooting, he testified he heard the two shots, the first from a shotgun, followed immediately by a pistol shot.

Orange, Lath and Maude all testified that as Jones came up to the car, he reached in his coat and the Gambrel boys drew their shotguns telling him to stay out of the women's fight. By that time Fry came up and walked between Orange and Jones. Lath was near the front of the car on the berm of the road facing Jones, who was also on the berm, but at the rear of the car. Orange was in the highway at the back of the car and to the side of Jones. Fry told Jones to give him his pistol, that the Gambrels would not hurt him, to which the Gambrels agreed, and Jones said, "all right." Lath then turned his face towards the car, at which instant Jones in a "lightning-like" move drew his pistol, shot Lath in the left hip, and as he was falling Lath wheeled and shot Jones in the mouth within a range of some six to ten feet killing him instantly. Fry corroborated these three witnesses as to their version of the shooting, but testified he did not know who fired the shot which killed Jones, although he was standing between Jones and Orange and within a few feet of all three of the men. Fry did testify, however, that Jones was killed instantly and could not have fired a pistol after he was shot. Also, Partin, the sheriff, who saw Jones some thirty minutes after he was killed, testified Jones could not have fired the pistol after he was shot. There was no objection to

this testimony of Fry or of Partin. In rebuttal four witnesses testified that Fry was not at the actual scene of the shooting as he claimed, but was below the bank of the road and was approaching the place of the tragedy at the time the shots were fired.

There is a direct conflict in the evidence and we cannot say the verdict is flagrantly against the evidence. Any evidence, even though slight or circumstantial, which tends to establish the guilt of the accused of any degree of the offense charged, is sufficient to take the case to the jury and sustain a conviction unless the verdict is so flagrantly against the evidence as to shock the conscience or lead to the conclusion that it was the result of passion or prejudice rather than the deliberate consideration of the jury. Harlan v. Com., 253 Ky. 1, 68 S. W. (2d) 443; Russell v. Com., 276 Ky. 38, 122 S. W. (2d) 1009. We frankly admit the evidence preponderates in favor of the defendant that he did not fire the fatal shot, and that Lath fired it in self-defense, but we cannot invade the province of the jury and weigh the evidence. Where the verdict is sustained by some evidence it must be upheld. Gilbert v. Com., 228 Ky. 19, 14 S. W. (2d) 194; Maggard v. Com., 232 Ky. 10, 22 S. W. (2d) 298.

There is no merit in appellant's contention that he should not have been convicted as an aider and abettor on a separate trial after Lath had been acquitted as the principal. Appellant was indicted as a principal and we cannot determine from the record whether or not the jury convicted him of firing the shot which killed Jones or of aiding and abetting Lath in so doing. However that may be, we have an unbroken line of decisions to the effect that a defendant may be convicted on a separate trial of aiding and abetting the principal in the commission of a crime after the principal has been acquitted. Reed v. Com., 125 Ky. 126, 100 S. W. 856, 30 Ky. Law Rep. 1212; Christie v. Com., 193 Ky. 799, 237 S. W. 660, 24 A. L. R., 599; Smith v. Com., 216 Ky. 813, 288 S. W. 752; Com. v. Long, 246 Ky. 809, 56 S. W. (2d) 524. We are not disposed to grant appellant's request and overrule these cases as unsound, as it is evident that different juries may reach different conclusions as to the guilt of the principal.

The criticisms appellant makes of the instructions

are not well taken. The testimony is not clear as to which of the Gambrels shot Jones, hence the court did not err in instructing that Orange might be convicted if he fired the shot, or if he aided and abetted Lath in so doing. Section 1128, Kentucky Statutes, makes accessories before the fact subject to the same punishment as principals, and in a joint indictment charging a felony either of the defendants may be convicted as principal or as aider and abettor although the indictment charges neither with aiding and abetting. Hogan v. Com., 230 Ky. 680, 20 S. W. (2d) 710; Pitts v. Com., 261 Ky. 236, 87 S. W. (2d) 364. It is argued that the instruction on aiding and abetting assumes that Orange did aid and abet Lath. But when this instruction is read as a whole, it is quite plain no such assumption was made and it was left to the jury to determine from the evidence beyond a reasonable doubt whether or not Orange aided and abetted his brother in this killing. There was no reason for the court to instruct on abandonment of the difficulty, since there was no evidence whatever that Lath or Orange did abandon it when Fry is supposed to have come up a minute or so before the shooting occurred.

Perceiving no error in the record prejudicial to the substantial rights of the defendant, the judgment is affirmed.