## Reed v. Commonwealth.

Jan. 20, 1942.

174

Wolfinbarger & Rice for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY—
Affirming.

At the May, 1941, term of the Estill circuit court, the grand jury jointly indicted Wayne Reed, Leonard Reed (his brother) and Garnie Walters, accusing them of the crime of dynamiting fish in Estill county, committed by willfully and feloniously placing or causing to be placed dynamite in the Kentucky river and by exploding or causing it to explode, thereby killing fish in the stream.

Wayne Reed was tried separately on the charge, convicted and his punishment fixed at one year's confinement in the state reformatory.

At a later day of the same May term of court, the case was again called for trial, when the indictees, Leonard Reed and Garnie Walters, were jointly tried on the charge, convicted and their punishment also fixed at one year's imprisonment in the state reformatory.

The defendant, Leonard Reed, contending that the jury's verdict returned against him, finding him guilty, was not supported by the evidence, duly filed his motion and grounds for a new trial, which the court overruled.

Complaining of this ruling, denying him a new trial, as erroneous, Leonard Reed has prosecuted this appeal, seeking a reversal of the judgment entered upon that verdict upon two of the grounds set out in his motion for a new trial, which are as follows: (1) That the court erred in refusing to direct a verdict of not guilty at the conclusion of the commonwealth's evidence and at the conclusion of all the evidence and (2) because of the court's failure to properly instruct the jury upon the whole law of the case.

We will now turn our attention to the discussion and disposition of these two objections in the order presented.

In our consideration of the first of these, wherein appellant contends that the court erred in failing to peremptorily instruct the jury to find him not guilty, it may be here stated that the merit of such contention must depend upon and be determined by what is found to be the character and quality of the evidence introduced by the commonwealth, in respect to whether same constituted but a scintilla of proof or was evidence of probative and substantial character.

Such being the criterion by which appellant's claimed right to a peremptory instruction is to be measured, we will here undertake to briefly state the evidence given by the commonwealth's witnesses (which is here by the record brought before us only in narrative form), to determine whether same was of such substance and probative quality as required to support the jury's verdict based thereon, finding defendant guilty.

The testimony of Huram Canter, the first of the commonwealth's witnesses, is to the effect that on the day the offense here charged is said to have been committed, he was going to the home of a neighbor, who lived on the opposite side of the bridge across the mouth of Cow creek from his home, and that upon reaching the vicinity of the bridge, he saw Garnie Walters, Wayne Reed and Leonard Reed near the mouth of the creek and under the bridge across Cow creek and went down under the bridge near where they were; that at about the time he got under the bridge and within a few feet of the defendant and his named associates, he saw Wayne Reed with something in his hand, which he lighted and threw into the creek, when an explosion followed and several minnows floated to the top of the stream, apparently dead or stunned. Further he testified that immediately after the explosion, Leonard Reed, with Wayne Reed and Garnie Walters, got into a row boat, when Leonard rowed the boat into and up the river and that later he heard another explosion, which seemed to be up the river from Cow creek.

Mrs. Arbrose Ashcraft and John W. Jones also testified for the commonwealth to similar facts, the latter further testifying that after Leonard Reed, Wayne Reed and Garnie Walters had gotten in the boat and been rowed up the river several hundred yards by the appellant, Leonard Reed, he heard another explosion occur-

ring up the river, but he did not know who of them threw the dynamite, and that he then saw them go to the shore, when two of them got out of the boat; and that Leonard Reed rowed the boat back to the mouth of the creek, from where he had taken it.

Eva Ashcraft, another witness for the commonwealth, testifies that a few minutes before she heard the explosion, as she was crossing the bridge over Cow creek in going to her home, she saw Garnie Walters on the bridge; that after reaching her home and on hearing an explosion, she went to where she could see the creek; that she there saw Leonard Reed, Garnie Walters and Wayne Reed, under the bridge, and that they all three got into a row boat and went into and up the river.

Such was the evidence for the commonwealth when defendant moved for a peremptory instruction, which was overruled.

Thereupon, without standing on his motion, he proceeded to testify in his own behalf and also introduced the evidence of Garnie Walters in his behalf.

Appellant does not in his testimony deny that he was present at the bridge with Garnie Walters and his brother, Wayne Reed, when his brother (as is admitted by him) lighted and threw dynamite into the river, which exploded therein and killed fish. He testifies that following the explosion of this dynamite by his brother, Wayne Reed, he asked Wayne Reed and Garnie Walters to get into a row boat, which was tied at the mouth of Cow creek and belonged to a friend of his; that they got into the row boat and he rowed them up the river about 300 yards, when there was another explosion near the boat, but that he did not know what caused it, as at that time he was sitting in the boat with his back towards Wayne Reed; that at this point he got afraid to go further with Wayne Reed and rowed the boat to the shore, where he had his brother and Walters get out and that they went up the hill to the road, where they got into a car, while he took the boat to the mouth of Cow creek, where he had gotten it, after which he went home.

He further states that on the occasion of this dynamiting of fish by his brother, he was in Ravenna with his friend, Garnie Walters, at the home of Walters, when they drove to a garage where Wayne Reed had been and asked the operator of the garage about him and were in-

formed that he had gone towards Cow creek bridge and that he was drunk; that appellant then asked his friend, Walters, who owned and was driving the car, to go with him to find Wayne Reed and that when they got to Cow creek bridge, they found him down near the creek, under the bridge, and that when they went down near him, he saw that he had "a dynamite" or what he thought was dynamite and that he was lighting it and that, over his protest, he threw it into the creek, where it exploded and some dead minnows rose to the top of the water; that he knew nothing of Wayne Reed's having any dynamite and that neither he, nor anyone else, had anything to do with his throwing it into the creek.

His friend, Garnie Walters, who had been jointly tried and convicted with appellant, also when testifying narrated a like account of his and the appellant's conduct and actions upon this occasion, stating that they had gone to the bridge to get Wayne Reed, whom they were informed was there in a drunken condition and that, after finding him there, he committed the offense charged of dynamiting fish, without their participating therein but directly over Leonard Reed's protest; further, that following Wayne Reed's dynamiting fish at the bridge, he again, as appellant was rowing him and Wayne Reed up the river, threw dynamite into the river, whereupon the appellant, Leonard Reed, rowed them to the bank and asked Wayne Reed and him to get out of the boat, after which Leonard took the borrowed row boat back to Cow creek.

· Upon the conclusion of the introduction of the defendant's evidence, he again moved for a peremptory instruction, which was again refused, when the court instructed the jury upon the applicable law of the case as follows:

First the jury were by the instruction told that if you "believe from the evidence beyond a reasonable doubt that * * * the defendants, Garnie Walters and Leonard Reed, unlawfully, willfully and feloniously placed dynamite and explosives in the Kentucky river, and exploded and caused said dynamite and explosives to explode in said Kentucky River thereby killing fish" or, second, "if you shall believe from the evidence beyond a reasonable doubt that * * * the defendant, Wayne Reed, unlawfully, willfully and feloniously placed dynamite and explosives in Kentucky river and exploded

or caused to explode said dynamite and explosives thereby killing fish and that said Garnie Walters and Leonard Reed were present at the time and near enough so to do and did aid, assist, command and encourage the said Wayne Reed to so place dynamite and explosives in the Kentucky River and exploded or caused to explode said dynamite and explosives thereby killing fish, you will find the defendants guilty and fix their punishment by confinement in the state reformatory for one year.''

While the rule is well settled, as said in Stanley's Instructions to Juries, Section 760, page 1027, that ''in a criminal case it is the duty of the court to prepare and give instructions on the whole law (Morgan v. Commonwealth, 242 Ky. 116, 45 S. W. (2d) 850), whether requested or not, for the defendant is not required to offer instructions or to object to instructions given'' and which rule ''requires instructions applicable to every state of case deducible from or supported to any extent by the testimony (Smiley v. Commonwealth, 235 Ky. 735, 32 S. W. (2d) 51),'' we are of the opinion that appellant's criticism of the court's instruction (though not objecting thereto), as not giving the whole law of the case, is not well taken.

The court instructed the jury that they might, under the evidence, find the defendants guilty as principals in committing the offense charged or could find them guilty as aiders or abbettors in the commission of said offense, if they believed beyond a reasonable doubt that they, at the time Wayne Reed threw the dynamite into the river, killing the fish, were present and near enough to and did aid, assist and encourage the said Wayne Reed in the commission of the said offense.

As said in Gambrel v. Commonwealth, 283 Ky. 816, 143 S. W. (2d) 514, 516:

''Section 1128, Kentucky Statutes, makes accessories before the fact subject to the same punishment as principals, and in a joint indictment charging a felony either of the defendants may be convicted as principal or as aider and abettor although the indictment charges neither with aiding and abetting,'' as was here the case.

The next and chief objection urged by appellant for reversal of the judgment is that the court prejudicially erred in refusing to sustain his motion, both at the con-

clusion of plaintiff's proof and at the conclusion of all the proof, to peremptorily instruct the jury to find him not guilty.

In answer to this contention, it is to be observed that the question of the appellant's right to a peremptory instruction necessarily must turn on and be determined by the evidence.

"In ruling upon a motion for a peremptory instruction to the jury to return a verdict in favor of a party, all the opposing evidence is to be considered as true and all inferences that may be fairly and rationally drawn from it favorable to him are to be regarded. The effect or sufficiency of such to establish a cause of action or a defense, as the case may be, then becomes a matter for the court to determine." Section 6, page 8, Stanley's Instructions to Juries.

In the same text, in discussing the scintilla rule, which for a long while was adopted and followed by this court, (Section 4, page 4) it is said:

"In measuring the quantum of evidence sufficient to take a case it has been usually stated that only a 'scintilla' is required (Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110 [85 A. L. R. 996]). 'Such standard of measurement means that there must be evidence of something of substantial and relevant consequence, carrying the quality of proof and having fitness to induce conviction, and not vague, uncertain and irrelevant matter, giving rise to chimerical probability.' (Duff v. May, 245 Ky. 709, 54 S. W. (2d) 4) * * *

"However, the rule was not specifically abolished until early in 1940 when Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877 was rendered. Instead of the former practice, the court submitted the proper rule to be: 'When the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict if returned must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant.' As a further guide it was said: 'In the application of this rule it must be borne in mind that a verdict is set aside on the ground that it is not sustained by the evidence only when it is "palpably"

or "flagrantly" against the evidence, or as sometimes said by this court "so flagrantly against the evidence as to indicate that it was reached as a result of passion or prejudice on the part of the jury." ' ''

This rule, so announced in the Nugent case, has since been consistently followed and is the same as declared and stated in Rose v. Commonwealth, 286 Ky. 53, 149 S. W. (2d) 772, 774, that:

"Where there is any evidence which tends to establish defendant's guilt of any degree of the offense charged, it is sufficient to take the case to the jury and sustain a conviction, unless the verdict is so flagrantly against the evidence as to shock the conscience, or leave little or no escape from the conclusion that it was the result of passion or prejudice on the part of the jury. Gambrel v. Com., 283 Ky. 816, 143 S. W. (2d) 514; Russell v. Com., 276 Ky. 38, 122 S. W. (2d) 1009.; Jennings v. Com., 239 Ky. 629, 40 S. W. (2d) 279."

Further:

"It is generally stated that the trial judge has the same authority to give a peremptory instruction in a criminal prosecution as in a civil case; but since it is never permissible to direct a verdict of conviction except upon a plea of guilty, this authorization is limited to a direction to find the defendant not guilty." Stanley's Instructions to Juries, Section 759, page 1025.

When measuring appellant's claimed right to a peremptory instruction by the criterion of these stated principles, it appears clear that the testimony given by the commonwealth's witnesses, to the effect that both appellant and the two named defendants were all present at the bridge at the time it is admitted that one of them, Wayne Reed, committed the charged offense of dynamiting fish and that appellant at once, apparently as if in concert with him and for the purpose of aiding and abetting him in escaping the consequences of committing the offense, directed him and his companion, the other defendant, Walters, to get into a row boat he there procured and assisted in their escape by carrying them away from the scene of the crime, tended strongly to connect appellant with the commission of the offense charged,

or with aiding and abetting his brother in its commission, and that the lower court properly overruled appellant's motion for a directed verdict.

Under the instruction of the court, based on Section 1128, Kentucky Statutes, the jury were directed that they might find the appellant, Leonard Reed, and Garnie Walters guilty of the offense of aiding and abetting in the commission of the offense charged of dynamiting fish, if they believed from the evidence beyond a reasonable doubt that they were at the time when Reed committed the offense present and near enough to and did aid and assist Wayne Reed in the commission of the fish dynamiting offense, for which they were all jointly indicted.

Neither the appellant nor Walters, his co-defendant, in testifying denied they were present with Wayne Reed under the bridge at the time of the commission of the offense charged or that the appellant, Leonard Reed, did at once, after the commission of the offense by his brother, Wayne Reed, spirit him away from the scene of its commission in a row boat, procured and used by him for such purpose.

Clearly this testimony given, if believed by the jury, was amply sufficient to sustain a conviction and to furnish a conclusive answer to any claim that their verdict was so flagrantly against the evidence as to shock the conscience or leave little or no escape from the conclusion that it was the result of passion or prejudice on their part.

Perceiving no error committed upon the trial, the judgment is affirmed.