# Vance et al. v. Commonwealth.

March 27, 1942.

A. F. Childers for appellants.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellants, brothers, were jointly indicted for murder, tried together, convicted of voluntary manslaughter, and sentenced to twenty-one years confinement in the penitentiary. Two grounds for a reversal are urged, namely, that the evidence was insufficient to uphold the verdict, and, since there was no charge of "aiding or abetting" in the indictment, the Court erred in instructing the jury on that subject. The second ground may be summarily disposed of by a reference to Roberson's New Criminal Law & Procedure, Section 186, which states the long established rule in this jurisdiction in the following language:

> "The distinction between principals in the first and second degree is of no practical importance. All the offenders may be included in the same indictment, which may charge the offense as done generally by all, or especially, as done by one and abetted by the rest. Thus, if two or more persons are indicted as the actual perpetrators of a crime, they may be convicted as principals in the first degree,

although some of them were merely aiders and abettors. To indict both the principal and aider and abettor as principals, they are notified that the commonwealth can and will attempt to prove, in order to make out their crime, that one did the principal act and the other aided and abetted, and may prepare their defense accordingly.''

It may be conceded that the testimony was conflicting, and probably much of it perjured; but the fact remains that the killing occurred on the premises of the victim, Frank Filastro; that it was committed by one of the appellants; and that whether their mission to the premises is to be regarded as hostile or peaceful is dependent solely upon whether they or the Commonwealth's witnesses are to be believed.

Filastro and his wife ''ran a beer joint,'' below which, and connected therewith on the river bank, were their living quarters. John Vance, Filastro, Filastro's wife, and others, including one Culsky Dominick, had spent the forenoon there, some of them, including John, drinking heavily. Dominick, who lived at Freeburn, about a mile distant, where John also resided, had apparently been in Filastro's place for several days, and John claimed that he had been furnished with gasoline for his car to bring Dominick and another home, and that he was on this mission when he returned in the late afternoon and shot Filastro. John testified that Dominick had gotten mad and thrown him on the bed, which was the occasion of his leaving without Dominick early in the afternoon. Dominick, however, says that the cause of the quarrel was his remonstrance with John for using profane language in the presence of Mrs. Filastro, and that when John left he said: ''I will see you after a while, got a good gun at the house. I will be back after a while.'' Mrs. Filastro phrased the threat slightly differently. According to her, John said:

''I have got a God Damn good thirty-eight down home that wont slow down, I am going to go and get it and come back and kill you all.''

Be this as it may, he returned about two hours later in company with Homer, who, according to the Commonwealth's witnesses, carried a pistol in his hand as he approached and entered the living quarters, preceded by John. According to Mrs. Filastro:

"John come first and then Homer came, well I told them to get out. * * * they wouldn't go, Homer was trying to get John out though, but whenever my husband come down Homer met my husband at the door with the gun and tried to push him out. * * * Well whenever he done that I took hold of Homer and pushed him back myself, because I thought he was going to shoot him then. * * * And then they went to shooting. Homer went to shooting and John went to fighting, so I got the gun and they shot me. I got the rifle after they had done shot once at me and then I said well if you want to kill somebody I will just kill you while you are down here, that is what I said after he had shot him and killed him."

Dominick did not see the shooting but was awakened by the shots. Neither did he hear John say, as testified to by Mrs. Filastro, "God Damn you, Dominick, wake up, I come to kill you." A fifteen year old boy who accompanied John part of the way on his return trip testified that John said, "he was going up their and kill somebody before he come back." He claimed to have seen the shooting from the outside, stating:

"Well, Homer he was in the house and come back and Frank was standing there on the walk and he pulled the gun and told Frank to stand back, Frank was standing there and had a poker in his hand and Homer started shooting."

Julia Lester, a participant in the early afternoon carousal, claims to have seen from the porch of her house Homer and John approaching Filastro's place, John leading and Homer following with a pistol in his hand, and that she heard Filastro, who was outside with a poker in his hand, say to them: "Boys, don't go down there." As they entered, she saw Filastro "step up and kindly push over that way." Afterward, she saw Homer step to the door with a pistol in his hand as Filastro was going in the door.

John testified that pursuing his peaceful mission of returning Dominick to his home, he asked Filastro, who was sitting outside, where Dominick was, and upon being informed that he was asleep, entered the building, shook Dominick by the arm and told him to get up, whereupon Mrs. Filastro came to the door and told him to get out. Homer came into the room—

"And then we started, we were coming on out and met Frank coming in at the door, Frank coming in at the door with a poker and he drawed it as he come in and we both asked him to let us out, stand back and let us out and about that time Lassie (Mrs. Filastro) grabbed right around Homer and Frank hit at him and he dodged the lick. * * * and when he done that he started to hit him again and I shot. Then by that time Lassie had got that rifle and was looking down at it trying to work it to shoot * * * She told me she would kill me and when I seen her with that rifle I shot her."

Homer testified that as he and John started out they met Filastro with a poker in his hand, "and we asked him, both asked him to stand back and let us out and he just rushed right on into us and the woman grabbed around me and he hit at me and I shoved her and at the same time he hit me on the arm with the poker"; and that thereupon John shot Filastro and Mrs. Filastro.

It is, perhaps, true that the account given by the appellants and their witnesses is as credible as that given by the Commonwealth's witnesses; but John's excuse for returning to the Filastro place was unconvincing, since he had made no effort to take Dominick with him when he left the first time, and the jury was the sole judge of the weight to be given the witnesses' testimony.

The crux of appellants' argument that the evidence was insufficient to justify the Court's instructions on "aiding and abetting" is, quoting from counsel's brief:

"The Commonwealth in this case, undertook to, and did prove that Homer Vance did the shooting, and all that it showed as far as aiding and abetting was concerning that John was present, while the defendants proved that John did the shooting, and if he did, the only proof with respect to Homer's part in the trouble, was that he, at the time, was being assaulted by the man that got killed."

We have not attempted to set forth all of the testimony, but enough of it has been summarized to show the flaws in appellants' argument, since it is apparent that if the jury did not believe that John Vance shot in defense of Homer, as claimed by appellants, it was war-

ranted in believing that the actual slayer, whether John or Homer, was aided and abetted by the other. Childers v. Commonwealth, 288 Ky. 537, 156 S. W. (2d) 825; Gambrel v. Commonwealth, 283 Ky. 816, 143 S. W. (2d) 514.

Judgment affirmed.