## Galloway v. Commonwealth.

Jan. 19, 1943.

E. S. Wiggins and O. P. Jackson for appellant.

Hubert Meredith, Attorney General, and Frank A. Logan, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Ratliff—Affirming.

The grand jury of Madison county found an indictment against appellant charging him with the offense of grand larceny. The indictment charged that appellant stole three cattle of the value of $210, the personal property of W. C. Bennett. Upon trial of the case the jury found him guilty and fixed his penalty at one year in the penitentiary. From the judgment entered upon the verdict, he has prosecuted this appeal.

A number of alleged errors are set out in the motion and grounds for a new trial and are here insisted on for reversal. The first complaint is directed to the manner of the selection or empaneling of the jury. This complaint is based upon the fact that the judge of the court drew the names of the jurors from the wheel instead of directing the clerk to do so. Section 2266, Carroll's Kentucky Statutes, now codified as section 29.260, KRS, provides that the clerk, under the direction of the court, shall draw from the box the names of the jurors. An act done by the clerk at the direction and in the presence of the court is the act of the court, and since the court may direct the clerk to draw the names of jurors from the wheel, it is inconceivable that the rights of appellant could have been prejudiced if the judge committed the act rather than directing the clerk to do so. We find no merit in this contention.

It is next contended that reversible error was committed in the selection of the panel, in that more than four bystanders were summoned by the sheriff instead of being drawn from the jury wheel. The record does not show that any objections were made to the manner of selecting the jury, except it is stipulated between counsel for appellant and the Commonwealth's attorney that after 24 names were called and exhausted the court directed the sheriff to summon bystanders to fill out the panel and after the jury was accepted and sworn without any objections, defendant then moved to set aside

the swearing of the jury because a number of men selected were bystanders. The record does not specifically show that the court ruled on the motion, but from the nature of the record and the circumstances we presume that the court overruled the motion. But since it is not shown in the stipulation or otherwise that defendant objected to the court's ruling, appellant waived his objections to the manner of the selection of the jury. Furthermore, if objections were not waived, or if objections and exceptions had been properly made and taken at the time, we do not think it was error for the court to direct the sheriff to summon bystanders to fill out the panel. Section 2247, Carroll's Kentucky Statutes, now section 29.280, KRS, provides that if in a criminal or penal action called for trial the panel is exhausted by challenge, the judge may supply such jurors by drawing from the drum, or may direct the sheriff to summons for the trial any number of bystanders or persons to fill such vacancies. See, also, GeBurk v. Commonwealth, 153 Ky. 264, 155 S. W. 381; Thurman v. Commonwealth, 154 Ky. 555, 157 S. W. 919; Jennings v. Commonwealth, 239 Ky. 629, 40 S. W. (2d) 279.

The next contention is that the evidence is insufficient to show that appellant stole the cattle and the verdict is not sustained by the evidence. W. C. Bennett, the prosecuting witness, testified that he missed three head of his cattle about the first of March, 1942, and upon investigation he learned that they had been sold at the Producer's Sales Company Market at Lexington, Kentucky. He finally located his cattle on the farm of one Mr. Rogers in Bourbon county. It was developed that another Mr. Rogers had bought the cattle at Lexington and sent them to the farm of his brother in Bourbon county where Mr. Bennett located the cattle and positively identified them and Mr. Rogers returned them to Bennett without any controversy. It is not disputed that the cattle belonged to Mr. Bennett and had been stolen from him.

Russell Burrus, who was engaged in transporting cattle and other commodities by motor truck, testified that on the morning of March 5, 1942, appellant called him and told him to come by Boyd Wells' scales and get some cattle for him and bring them to Richmond and take them to Lexington. He went to the place named and got the cattle but did not see appellant there but

he had told him that "He would be there at the scales up front." He later saw appellant and he asked him if he could take the cattle to Lexington for him and he told him that he would and he and appellant proceeded to Lexington with the cattle. On the trip from Richmond to Lexington appellant told Burrus that he bought the cattle on a court day on the second day of March but said he could not remember the name of the man who sold him the cattle, but later he said he bought them from a man by the name of "Tom Owens." About the time they arrived at Lexington appellant told Burrus to sell the cattle in Tom Owens' name, which he did in the presence of appellant, and the check was made payable to Tom Owens and delivered to Burrus, which he then delivered to appellant when they went back in the truck.

Robert Covington, an employee of the State Bank and Trust Company at Richmond, testified that appellant presented a check (later shown to be the same check received for the cattle) to the bank endorsed by Tom Owens by appellant. The bank refused to cash the check without Tom Owens' endorsement and appellant left the bank with the check saying that he would get Tom Owens to endorse it, and later returned with the check with Tom Owens' name endorsed thereon. The bank accepted the check and placed it to the personal account of appellant and he, appellant, later checked the money out. Spears Turley, Vice President of the bank, testified that the check referred to was drawn on a Lexington bank and after the check went through the usual channels for collection and paid by the Lexington bank, a question arose about the cattle being stolen and the Lexington bank asked the Richmond bank to send the check back and that the money be refunded. Later he saw appellant and talked to him about the check and appellant said "You have nothing to do with that check, tell them I will be over in a few days." On cross-examination the witness further testified that appellant further said to him, " 'You've got nothing at all to do with the transaction of that check.' Said for me to write to them and tell them he had been sick," and further said "under the circumstances he would have to refund the money to them himself," or something to that effect.

Appellant testified that he went to Mr. Bennett's farm in January, 1942, to see him about buying some cattle, but denied that he had been there since that time,

and denied that he stole the cattle or had anyone else to do so, or had any connection with or knowledge of the matter at all. He further said that in the latter part of February a man came to him and offered to sell him some cattle; he asked him his name and where he lived and he said his name was Tom Owens and that he lived at Valley View; after some discussion they finally agreed on the price of the cattle and the place of delivery. He said he called one of his truckmen and asked him if he could take the cattle to Lexington and the truckman said he could on the next Thursday. He told the man (Owens) that he probably could get him on the telephone at the pool room on Wednesday and the man called him there and asked him about sending the cattle to Hayden's scales and he told the man what he could pay him for the cattle if he would send them to Wells' scales and he said he would have them there by 8 o'clock in the morning. He then called a number of truckmen, but they were all busy, and he finally called Burrus and asked him if he could go to Wells' scales and get the cattle and told him if the man was there to tell him to come with him and go to Lexington with them and see the cattle weighed. Burrus arrived with the cattle but the man was not with him. They then went to Lexington and Burrus got the scale ticket and he told Burrus to put them in the name of Tom Owens, as it was his custom when he bought cattle from anyone to put them in the name of the person from whom he bought them. He was asked if he gave Tom Owens' address and he said that he did not give any address except he told them that he said he lived near Valley View. They got the check and then went back to Richmond and took the check to the bank, and in speaking of the manner of endorsing the check he said ''I went in the bank and wrote Tom Owens by me''; that he was told by the cashier that he would have to get Tom Owens to endorse the check, and he then went to the yards where he found Owens and asked him to endorse the check so he could get the money on it and Owens endorsed the check and gave it back to him, and he then took the check back to the bank and deposited it and got $50 in cash. On the Saturday following he wrote a check to Owens for $81.50, plus the $50 cash he had, making a total of $131.50 which he owed Owens for the cattle, but he did not see Owens on Saturday and on Monday following, still being unable to find Owens, he went to the bank and cashed the

check, and in the later afternoon on Monday Owens came in the pool room and he gave him $131.50. He said that on the Thursday following he and C. C. Wallace went to Oklahoma and stayed about ten days; upon his return from Oklahoma he heard that it was being rumored that he had stolen some cattle and left the State and he immediately went to see Mr. Bennett and Bennett told him that he knew that he did not steal the cattle but asked him to help find the one that did take them. He told Mr. Bennett how he got the cattle and said that he knew two men who lived in the Valley View neighborhood and that he wrote one of these men asking him if he knew Tom Owens or any man by that name in that community. He did not state whether or not he received a reply to his letter or any information concerning Tom Owens, but said he did all he could to locate him. He further testified that he never had seen Tom Owens since he paid him for the cattle on Monday evening following the sale of them at Lexington, and that he did not know whether he would recognize him if he should see him. A number of witnesses who testified in the case were asked if they knew Tom Owens or any man by that name in Madison county and all of them said that they did not know any man by that name. Mr. Bennett was called in rebuttal and testified that he did not state to appellant that he knew he did not get the cattle and all he wanted him to do was to help him find who did get them. Mr. Bennett said: "Mr. Galloway did most of the talking. If Mr. Galloway drew any such conclusion as that, he was unauthorized, I didn't say that."

It appears that appellant's conduct was unusual. He did not appear at Wells' scales where he directed Burrus to get the cattle and was not present when the cattle was turned over to Burrus at that place. Also, when they arrived in Lexington he had Burrus negotiate the sales, put the cattle in the name of Tom Owens, receive the check and later deliver it to him. Also, according to the evidence of the Richmond bank officials where the check was cashed, it appears that after appellant learned that there was some trouble about the cattle and the check he appeared anxious to stop any further investigation of the check. He told them that they had nothing to do with it and that he would go to the Lexington bank and adjust the matter. It is also apparent from appellant's own evidence that he made only a feeble effort, if

any, to locate the man who sold him the cattle who said his name was Tom Owens. In the circumstances the jury perhaps believed, and had the right to so believe, that such conduct is not consistent with honest business transactions. Furthermore, it is shown conclusively that appellant did possess, transport and sell stolen property. It is the well known rule that possession of stolen property is prima facie evidence of guilt and the burden then shifts to the possessor to explain how he came into possession of the property by clear and satisfactory evidence. We are unable to conclude that appellant's explanation is sufficiently clear and convincing as to unauthorize the jury to find him guilty. We think the evidence was sufficient to take the case to the jury and to sustain the verdict.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.