## Meyers v. Commonwealth.

(Decided April 21, 1922.)

### Appeal from Bracken Circuit Court.

1. Arson—Corpus Delicti in Crime of Arson.—The corpus delicti in the crime of arson and other unlawful burning of property consists in the fact (a), of the burning and (b), of a criminal or an incendiary agency in producing it, but sufficient proof of such criminal or incendiary agency may be furnished by circumstantial evidence from which the origin of the fire may reasonably be inferred.

2. Criminal Law—Bloodhounds—Competency of Evidence as to Conduct.—Testimony as to trailing by bloodhounds of one charged with crime, may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime, only after it has been shown by some one having a personal knowledge of the facts, (a) that the dog in question is of pure blood and of a stock characterized by acuteness of scent and power of discrimination; (b) is itself possessed of these qualities and has been trained or tested in the tracking of human beings; and (c) that the dog so trained and tested was laid on the trail, whether visible or not, concerning which testimony had been admitted and at the point where the circumstances tend clearly to show that the guilty party had been, or upon a track which such circumstances indicated had been made by him.

3. Criminal Law—Bloodhounds—Competency of Evidence as to Conduct.—The trailing of bloodhounds when brought within the above rules entitling it to be received is admitted, either in corroboration of other testimony tending to establish guilt, or is competent to establish an additional circumstance tending to show guilt, but in either event it is insufficient standing alone and in and of itself to authorize a conviction.

4.  Criminal Law—Bloodhounds—Evidence.—In this case the only
    other evidence remotely bearing upon the issue of guilt was (a),
    that defendant in talking to his neighbor, whose barn was burned
    and for which defendant was indicted, said to him in substance
    that he "had better" swear to a certain fact concerning a suit
    of defendant then pending; and (b), that defendant though liv-
    ing within a quarter of a mile of the fire did not go to it or offer
    to render any assistance, explaining that he and the owner were
    on non-speaking terms. Held, that those two circumstances were
    insufficient with the trailing of the bloodhounds to authorize a
    conviction.

M. HARGETT for appellant.

CHAS. I. DAWSON, Attorney General, THOMAS B. McGREGOR,
Assistant Attorney General, and B. S. GRANNIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant, Omar Meyers was indicted by the grand
jury of Bracken county jointly with his father, Fred
Meyers, and his brother, Andy Meyers, in which they
were charged with the offense of feloniously set-
ting fire to and burning the barn of their neigh-
bor, Wilfred Cooper, and upon his separate trial,
which he demanded, he was convicted and sen-
tenced to confinement in the penitentiary for a term of
five years. He moved for a new trial, which was over-
ruled, and he prosecutes this appeal. Numerous alleged
errors are contained in the motion for a new trial, but the
principal ones argued in this court, and which are the
only ones we conceive to be of any materiality, are (1)
failure of the Commonwealth to establish by its evidence
the *corpus delicti,* and (2), the insufficiency of the evi-
dence to support the conviction, which two grounds we
will briefly consider in the order named.

1.  It is a well settled rule of criminal practice and
procedure, which is adhered to by all Anglo-Saxon courts
so far as we are aware without exception, that in crim-
inal prosecutions there must be some competent proof of
the *corpus delicti,* else the prosecution will fail. In the
case of Spears v. State of Mississippi, 92 Miss. 613, re-
ported in 16 L. R. A. (N. S.) 285, 46 So. R. 166, it was held
that the *corpus delicti* in the crime of arson consists in
proof of the burning and that the fire was caused by some
criminal act. In the annotated note to the case, as re-
ported in the above volume of L. R. A., many cases sup-
porting the definition given by the Mississippi court are

referred to, some of which are: State v. Carroll, 85 Iowa 1, 51 N. W. 1139; State v. Jones, 106 Mo. 302, 17 S. W. 366; State v. Parsons, 39 W. Va. 464, 19 S. E. 876; Phillips v. State, 29 Ga. 105; People v. Wagner, 75 N. Y. Supp. 950; State v. Pienick, 46 Wash. 522, 11 L. R. A. (N. S.) 987, 90 Pac. 645, and State v. Millmeier, 102 Iowa 692, 72 N. W. 275.

The only case referred to therein, or which we have been able to find, holding to the contrary, *i. e.,* that the mere fact of the burning of the building without some proof of an incendiary purpose, is sufficient to establish the *corpus delicti,* is Sam v. State, 33 Miss. 347, but that case was practically overruled by the same court in the subsequent case of Pitts v. State, 43 Miss. 472, and was in fact overruled by that court in the Spears case, *supra.* The annotation referred to also cites numerous cases to the effect that slight evidence is sufficient to supply the element of an incendiary or criminal purpose and it may be established by circumstantial evidence, as has often been held by this court may be done with respect to any other fact necessary to establish guilt upon which to found a conviction.

In this case the burned barn had a concrete floor, and in the northwest corner of it was stored a considerable quantity of loose hay. On the outside and a short distance from the floor some of the weather boarding was loose or off, thereby exposing the bulk of hay, at a part of the barn which could not be seen from the owner's house, some one hundred and eighty-nine (189) feet distant. The fire was first discovered at about 8:15 p. m. on December 25, 1920, at the exact spot where the hay was exposed, and it was then only about the size of a barrel head, according to testimony of all the witnesses who first saw it. There had been no fire in or about the barn, except near the hour of four o'clock on the same evening the owner milked a cow in it and carried with him a lantern, the blaze of which was encased in a globe and it was set on the concrete floor a considerable distance away from the pile of hay, and under the circumstances the fire could not have possibly originated from it, even if we did not consider the time intervening between the time of the milking and the discovery of the fire. There is nothing to indicate that the fire could have originated by spontaneous combustion, and we are therefore convinced that the circumstances are sufficient to

justify the conclusion that it was of incendiary origin, which, according to the definition, *supra,* sufficiently establishes the *corpus delicti,* and this ground, therefore, must be overruled.

2. In considering and disposing of the second ground urged for a reversal, it will be necessary to make a brief statement of the facts. The accused, Fred Meyers, who was the father of appellant, lives about a quarter of a mile from his neighbor, Wilfred Cooper, and his family consisted at the time of himself, wife and some seven or eight children, including appellant, Omar Meyers. The other defendant, Andy Meyers, is a married son of Fred Meyers, who had no children, and lived about the same distance from the residence of his father and also the same distance from the residence of Mr. Cooper, the three residences, as we gather from the record, forming nearly an equilateral triangle. Immediately after Mr. Cooper discovered the fire, suspecting that it was of incendiary origin, he placed a guard around the barn to prevent anyone going near it and sent to Lexington for two bloodhounds and they arrived on the scene between three and four o'clock the next morning. They were taken by their owner to the point where the fire was first discovered and there took a trail, somewhat winding in its course, and went to the door of the residence of Fred Meyers, and when they arrived there they scratched on the door. Mr. Meyers, at the request of the sheriff, who was along, came to the door and both dogs went to him. The appellant was sleeping upstairs and when he came down shortly thereafter one of the dogs went to him, but neither of them went to any other person in the house. Upon leaving the house the dogs scented and traveled a trail to the home of Andy Meyers, whose wife was away and he was the sole occupant. From Andy's house a trail was taken along the third side of the triangle to the barn at the place of beginning. The trail from Andy's house to the barn crossed a branch and a wire fence. Some human tracks were found near the branch and mud was discovered on some of the wires of the fence, indicating that it had been crossed by some one with muddy feet, but no measurement of any of the tracks was made nor does the testimony attempt to connect either of the defendants therewith. It was shown that the bloodhounds used on the occasion were highly bred and thoroughly trained for the purpose of trailing human beings, and that one of them had been so engaged

for as much as seven and one-half years and the other for as much as three years, and that during that time their performance and work had been accurate and satisfactory. In addition to the testimony furnished by the trailing of the bloodhounds, it was proven by the Commonwealth that some time before the fire (the exactness of which is not shown) the appellant and his brother, Andy Meyers, each filed a slander suit against another neighbor by the name of Taylor in which they alleged that he had slandered them in the presence and hearing of Wilfred Cooper by accusing them of stealing a mattock and an axe, and they each sought damages in the sum of $10,000. Shortly after filing those suits the plaintiffs therein learned that Cooper would not testify to the alleged slanderous words, as charged in the petitions, and that he would only swear that Taylor in the alleged slanderous statement used the word ''took'' instead of the word ''stole.'' Subsequently they met Cooper and, according to his testimony, this occurred: ''They stopped me, Andy and Omar, and told me that a fellow told them that I wasn't going to swear that John Taylor said they stole the mattock and the axe; I asked them who told them that; they wouldn't tell me, and they started on, and they said, 'you better,' and went on.'' The slander suits were afterwards dismissed without a trial.

After the meeting testified to by Cooper the record discloses, in a very indistinct and unsatisfactory manner, that some mischievous depredations were committed on his premises, consisting of driving a buggy through his ripe tomato patch; driving tobacco sticks through piles of tobacco stacked in his field; throwing his farming implements and tools in the creek, and leaving his gates open so as to allow stock to go in and out of his fields and premises; but there is not even a suspicious circumstance found in the record pointing to either of the accused as the perpetrator of any of these acts of malicious mischief.

The above includes all of the evidence introduced by the Commonwealth, and at its close the court was asked to direct a verdict of acquittal, which was refused. The defendants then testified and the only additional fact or circumstance developed by their testimony, remotely pointing to their guilt, was the one that although they discovered the fire they remained at home and made no effort either to notify any of the neighbors or otherwise offer any assistance. They explained their action in

this respect by saying that there was a coolness of feeling existing between them and Cooper to such an extent that they did not speak when they met, and that under the circumstances they determined that any proferred assistance which they might offer would not be appreciated. At the close of their testimony the motion for a directed verdict was renewed and again refused, and it is those rulings of the court of which complaint is made under this ground.

It will at once be seen that one of the chief questions for determination is the proper effect to be given the trailing by bloodhounds, when the evidence is admissible at all, in criminal prosecutions. The question was before this court in the cases of Pedigo v. Commonwealth, 103 Ky. 41, 42 L. R. A. 432, 82 A. S. R. 566; Denham v. Commonwealth, 119 Ky. 508; Sprouse v. Commonwealth, 132 Ky. 269; Blair v. Commonwealth, 171 Ky. 319, and same case, 181 Ky. 218. The subject in its various phases is also exhaustively treated in the annotation to the Pedigo case in the volume of L. R. A. referred to, and in the annotation to the case of State v. Adams, 35 L. R. A. (N. S.) 870, and in the annotation to the case of Ruse v. State, L. R. A. 1917E, 726, the annotation beginning on page 730. There are also a great number of cases from other jurisdictions cited in the last Blair case, *supra.* From the references made above it will be found that with the exception of perhaps the courts of Indiana and Illinois the trailing of bloodhounds under certain circumscribing conditions, is competent evidence, but all the courts agree that before it may be introduced for any purpose it must be shown, as stated in the last Blair case, that the dog or dogs ''have been trained to follow human beings by their tracks and to have been tested as to its (or their) accuracy in trailing upon one or more occasions.'' It was because such preliminary proof was wanting that the first Blair case was reversed, but upon the second trial the trailing was made competent by proof of the quality and experience of the dogs. The other Kentucky cases referred to prescribe the same preliminary requirements, which were proven in this case and the competency of the testimony, for whatever purpose it is allowable, must be conceded.

The next question is, what effect shall be given to the testimony after it is received? With but few exceptions, as will be seen from the annotations, *supra,* the various

courts of this country before which the question has arisen for determination, have held that the unsupported testimony of the trailing of bloodhounds is not sufficient to authorize a conviction, and this, too, although their expertness and efficiency as well as accuracy may be established beyond question. None of the opinions referred to from this court appear to have determined the exact question, since in each of them there was other evidence of guilt, which if believed by the jury would authorize a conviction. This will be seen by a perusal of the opinions, and we will take neither the time nor the space to now point out that testimony in either of the cases.

In the Pedigo case, after prescribing the rules as above indicated, under which the testimony was admissible at all, the opinion says: "When so indicated, testimony as to trailing by a bloodhound may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime with which he is accused. When not so indicated the trial court should exclude the entire testimony in that regard from the jury."

The opinion in the last Blair case says: "It will be observed that the Commonwealth did not rely upon this testimony alone to convict Blair, but used it only as corroboration of the testimony of Dr. Bard, who testified that he recognized Blair while he was attempting to break into the Cameron and Acre store." Many of the cases referred to in the annotations, *supra,* and in some, or all, of the cases referred to in the last Blair opinion, expressly held that the trailing by bloodhounds, when admissible at all, is corroborative only of other evidence, or is a circumstance pointing to the defendant's guilt, and of course they hold as stated that the trailing alone would be insufficient to convict. Following the holding of the great numerical preponderance of the cases, which also conform to our conception of the correct rule, we have concluded to adopt the view that proof of trailing by bloodhounds standing *alone* is insufficient to authorize a conviction, for, after all, the trailing of the dogs is in the nature of expert testimony, which, when given by trained and educated persons, is regarded with more or less disfavor and classed as among the weakest character of testimony. Ky. Traction & Terminal Co. v. Humphrey, 168 Ky. 611, and cases and authorities therein referred to. Indeed, the excerpts, *supra,* from the Pedigo and

the Blair cases would seem to hold, by implication at least, that such was the view of this court at the time of the delivery of those opinions. Whether the evidence may be considered as substantive, and therefore corroborative of other evidence, or whether it constitutes only a circumstance which may be considered by the jury in determining the guilt of the accused, are questions which we are not called upon to determine at this time, since whether the evidence is received for the one or the other purpose can have no bearing upon its weight or sufficiency when standing *alone* to authorize a conviction. It, therefore, becomes necessary to determine whether there was other sufficient incriminatory evidence in this case which, taken in connection with the trailing of the bloodhounds (either received as an additional incriminatory circumstance or as proof of a corroborative fact), to uphold the conviction.

The only additional circumstance proven by the Commonwealth was the conversation with Cooper by Andy and Omar Meyers with reference to his testimony in the slander suits. It will be seen that there was nothing therein amounting to even a general threat and, certainly, there was nothing therein containing any specific threat or even containing any element of malice. The remark, "you had better," might, with as much propriety, be construed as an admonition as a threat. Even if it was a threat it would be insufficient by itself to authorize a conviction, as was held by us in the case of Daniel v. Commonwealth, 170 Ky. 693.

The other fact produced by the defendants' testimony, *i. e.*, their failure to go to the fire or offer any assistance, is at least partially explained from their standpoint, and their course in the matter was dictated by the same views which many persons hold in performing their duty under the same or similar circumstances. But, if it were otherwise, surely it could not be contended that one's life or liberty may be taken away from him under such remotely slight circumstances engendering at best a bare suspicion. There was, therefore, no convicting testimony or proven fact for the trailing of the bloodhounds to corroborate, nor were there any convincing circumstances proven in the case which would authorize a conviction with the aid and help of the trailing of the bloodhounds as an additional circumstance. Human life and liberty are much too sacred and too highly regarded in this country to be jeopardized or taken from the citizen, except

upon testimony carrying conviction beyond a reasonable doubt. That rule is hoary with age, and it is and has been looked to as the bulwark of all free and enlightened governments. It is true that it is likewise essential to orderly government that the criminal should be punished and we have held time and again that he may be convicted and punished on circumstantial evidence, but in each and every case so holding it is said that such evidence to justify a conviction, "must point unerringly to the guilt of the accused, and the circumstantial evidence must be of such a nature as to establish the guilt with reasonable certainty." See Hall v. Commonwealth, 149 Ky. 42; Dorsey v. Commonwealth, 158 Ky. 447; Taylor v. Commonwealth, 182 Ky. 728, and Daniel v. Commonwealth, *ante* 513, this day decided. As a corollary to that rule we have also held in numerous cases that where the evidence as a whole in a criminal case creates only a suspicion of guilt, a verdict of acquittal should be directed. One of the latest cases so holding is Saylor v. Commonwealth, 158 Ky. 768.

Appellant may or may not be guilty. The proof of his bad reputation went only to his credibility as a witness, but his testimony tended only to strengthen the prosecution rather than weaken it, as we have heretofore seen. If he is guilty it should be shown by the testimony according to the prescribed rules for criminal procedure and not by suspicion alone. We are convinced that the testimony falls short of establishing it.

It, therefore, results that the court erred in not sustaining the motion for a peremptory instruction, and the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.