## Tibbs v. Commonwealth.

(Decided April 29, 1938.)

LEEBERN ALLEN and WILLIAMS and ALLEN for appellant.

HUBERT MEREDITH, Attorney General, and WILLIAM HAYS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Howard Tibbs, was indicted by the grand jury of Wolfe county, in which he was charged with grand larceny committed by stealing two Jersey cows from their owner, William O'Hare, of the value of more than $20. At his trial he

was convicted and punished by confinement in the penitentiary for one year—the minimum provided by statute. His motion for a new trial, which the court overruled, contained only three grounds for setting aside the verdict and judgment pronounced thereon, and which were and are: (1) Error of the court in overruling defendant's motion for a directed verdict of acquittal at the close of the commonwealth's testimony; (2) if mistaken in ground 1, then the verdict is flagrantly against the evidence; and (3) "because the court erred in his instructions to the jury." On this appeal by him not a word is said in the brief of his counsel in support of ground 3—there being no reference whatever made to it—and which clearly demonstrates its abandonment. But if not so abandoned, the record contains no support whatever therefor, since the instructions conform strictly to the law with reference to this character of prosecution, and no requirement for the proper submission of the issues to the jury, which the evidence suggests, was omitted. We will, therefore, put aside that ground without further consideration.

In the determination of grounds 1 and 2 (which, because of their being based on the evidence, will be considered together) it is essential to state, in substance, the testimony introduced by the commonwealth; the defendant not testifying nor did he introduce any witness in his behalf, and the case went to the jury solely upon the commonwealth's proof. The bill of evidence as brought here is in narrative form, and in the interest of certainty we insert it verbatim as it appears in the record, and which is that:

"William O'Hare testified in substance that two cows of the value of more than $20.00 was stolen from him in Wolfe Co., and before the finding of the indictment herein; that said cows were kept by him on his place for milk cows and that he missed them on the morning of about Nov. 7th, 1936, that being the day following the night on which his said property was stolen. He testified also to facts indicating that these cows had been driven from his pasture to a highway bordering his farm and there loaded into a motor truck.

"Mrs. William O'Hare testified in substance to the same facts as testified to by her husband, except Mrs. O'Hare also testified that the cows were stolen from

their barn, and that the next morning she tracked the cows to the place where the truck was seen the night before by C. C. Cox, and George Cox.

"C. C. Cox was called as a witness, and he stated that he and his brother, George Cox, went from Campton, Wolfe County, to a place in Morgan County, and that in making that trip, which was the night the cows were stolen, they passed along the highway leading close by the place where William O'Hare lived and that they passed that place along about 1:30 o'clock in the morning; he and his brother were driving a truck and making about 20 miles an hour and that as they drove by the O'Hare place they noticed a truck parked, which truck, in his best judgment, belonged to one Albert Lackey; he had worked with Albert Lackey, and had ridden in his truck and was well acquainted with it. He did not see anybody at or near the truck, also that as they passed this truck they saw 2 jersey cows in it.

"Albert Lackey was then called as a witness, and he said that he was working in Breathitt County at the time he understood the cows were stolen. He said that William O'Hare, and the defendant lived near neighbors—within something like a quarter of a mile of each other—and that he lived about a mile from where they lived. He owned a truck which he had let or lent to the defendant, and that the defendant had kept and used it for about three or four weeks, and had it at the time the cows were stolen; that when he returned from Breathitt County he heard about the theft and also heard it rumored that his truck had been seen parked on the highway leading by the O'Hare premises on the night the cows were stolen, and that he went and took his truck home when he heard about this, and when Lackey found his truck the defendant was in the truck going in the direction of Lackey's home.

"Ray Stamper, the last witness for the Commonwealth, stated that he saw the Lackey truck in Hazel Green just before dark on the night the cows were stolen, and that he saw one John O'Hare get out of the truck. He did not see the defendant in or about the truck. Hazel Green is some 3 miles from the place where the cows were stolen. This was all the evidence heard on the trial of the case."

From that narration of the testimony (which must be accepted as correct for the purposes of this appeal),

counsel for defendant argues that, though one accused of violating the criminal law may be convicted on circumstantial evidence, yet it is not sufficient to sustain a conviction if it does no more than point "the finger of suspicion at the accused." He cites in support thereof the cases of Moore v. Commonwealth, 229 Ky. 765, 17 S. W. (2d) 1021; Pardue v. Commonwealth, 227 Ky. 205, 12 S. W. (2d) 288; and Meyers v. Commonwealth, 194 Ky. 523, 240 S. W. 71. Two later cases decided since this appeal was taken are Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. (2d) 49, and Collett v. Commonwealth, 272 Ky. 69, 113 S. W. (2d) 861. They—particularly the Privitt opinion—contain many other cases marking the dividing line between mere suspicion of the guilt of the accused as portrayed by the testimony, and where it possesses such probative and convincing force as to create a reasonable conviction of defendant's guilt. In the one case (that producing only a mere suspicion) the cases are unanimous in holding that a directed acquittal is proper, and the question for our determination—as submitted in ground 1, supra—is whether the proof of the commonwealth, as above inserted, extended any farther than the creation of a mere suspicion that defendant committed the larceny with which he is charged?

Appellant's counsel insist that it does not; while counsel for appellee argue to the contrary, and they cite, in support of their contention, that the evidence heard produced a submittable case to the jury and was and is sufficient to sustain its verdict, the cases of Phelps v. Commonwealth, 255 Ky. 655, 75 S. W. (2d) 217; Sumner v. Commonwealth, 256 Ky. 139, 75 S. W. (2d) 790; Jacobs v. Commonwealth, 260 Ky. 142, 84 S. W. (2d) 1; Nelson v. Commonwealth, 265 Ky. 332, 96 S. W. (2d) 1009; and Mays v. Commonwealth, 265 Ky. 558, 97 S. W. (2d) 419. In each of those five prosecutions the convictions were mainly, if not entirely, based upon proof of defendant's posession of the stolen property, and which was not satisfactorily or reasonably explained by him. The opinions, therefore, followed a long-settled rule in criminal practice to the effect that possession by the accused of stolen property is not only sufficient to submit the issue of his guilt to the jury under a charge of larceny, but likewise sufficient to sustain a verdict of guilty by the jury, and if the narrated testimony supra established the facts upon

which those opinions were rested our duty would be easy and plain.

But an analysis of the testimony as brought here does not, as we conclude, measure up to the "possession" rule as approved and applied in those and many other cases from this court, as well as other courts. The stolen cows in this case were shown to have been taken from the enclosure wherein they were kept, and that the one who did it drove them to the public road where they could be no farther tracked. At a late hour in the night it is shown that the truck owned by Lackey was seen in that road with two head of cattle in it, but neither the defendant nor any one else was seen in, around, or in the immediate possession of that truck at that time and place. It was shown that upon that occasion the truck was in the legal control or custody of defendant, it having been loaned to him by its owner. It also appears that the same truck was seen in the town of Hazel Green, about three miles from the scene of the larceny, on the late afternoon preceding its commission that night; but it was then in the possession of John O'Hare, and defendant was seen neither there nor thereabouts. If we were to stop at this point of our analysis, it is clear that the proof fell far short of that which appeared in the cases supra, cited and relied on by counsel for the commonwealth, in that no possession by defendant of any alleged stolen property was shown by the testimony, since it went no farther than to show that Lackey's truck—in the possession of no one—was seen in the road with two head of cattle in it. But further analysis develops that there was no identification of the cattle that the witnesses saw in that truck at the place and time to which they testified as being the property of William O'Hare, the victim of the larceny. Not even a description of the missing cows was given by either Mr. O'Hare, his wife, or any other witness in the case; nor did the witness Cox, or his brother, who saw the Lackey truck and that it contained two head of cattle, attempt to describe them. So that there is shown no similarity of descriptions so as to sustain an inference that the cattle that those witnesses saw in the truck were the alleged stolen ones belonging to O'Hare.

When so viewed it is clearly seen that the proof in this case was far removed from the "possession" rule upon which the convictions in the cases supra were sustained—so much so as to reduce this case to the point

where only a bare suspicion of appellant's guilt is shown, and which suspicion becomes the more wilted and less vigorous because of the fact that the animals seen in the truck by the witness Cox were in no manner identified or attempted to be identified as the property of the owner, as charged in the indictment. We are therefore forced to the conclusion that the court erred in not sustaining defendant's motion directing his acquittal—his conviction most probably being produced because of the fact that he did not testify, but which he had the right to do.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and for proceedings not inconsistent with this opinion.

The whole court sitting.