## Walker v. Commonwealth.

January 21, 1949.

Hiram H. Owens for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellant, John Walker, was indicted jointly with Clifford Bolton for the crime of grand larceny. On trial he was convicted and sentenced to 3 years in the Penitentiary. He prosecutes this appeal urging reversal on the sole ground that the evidence was not sufficient to sustain the verdict.

It becomes necessary briefly to review the evidence in order to ascertain whether or not there is merit in appellant's contention. It appears that Captain James K. Sullivan, owner of the Mercury automobile alleged to have been stolen, was spending the night with Sgt. Walter Partin, an instructor of the National Guard stationed at Barbourville. Partin stated that he was awakened sometime after midnight by a noise outside near the barracks and that he looked from his bedroom to the road where the car was sitting, which was 20 or 30 feet away. He said he saw nothing and went back to bed when about 5 minutes later he heard the noise again. This time the car lights were turned on and he then went to see if Captain Sullivan was still in bed, thinking probably he might have gotten up and gone some place without saying anything about it. He found Sullivan in bed. He awoke him and the two of them went down to the road and got in Partin's car for the purpose of going to notify the city police. The driver of the Sullivan car had gone on up the road, turned around and came back toward Barbourville. As the car passed Partin's house, Partin fired three shots over the top of the car. Partin and Sullivan then drove to the city square. The city police, having heard the shots, were on the alert. The above information was being given them when the driver of the Sullivan car drove around the square. Sullivan pointed out the car to the policemen as the one taken from him. Whereupon, the officers pursued the Sullivan car which proceeded back in the same direction toward the barracks where it had been taken. They immediately sounded the siren and the Sullivan car picked up speed, and when going around a curve at about 70 miles per hour, the driver lost control of the car and it turned over. When the policemen reached the car they found appellant as the driver and immediately apprehended him and placed him in jail.

The officers testified that Walker said he was hitchhiking a way to Cincinnati and that he was going to Cincinnati to see his sick wife.

Another officer testified that Walker, when asked who was with him, stated he was alone and that no one else was connected with the taking of the automobile.

This is the sum total of evidence, in substance, for the Commonwealth.

The defendant was the only witness testifying in defense. He protested his innocence and insisted that he was the victim of circumstancs. He insists that he did not steal the car but was only present to assist Bolton and that he had no reason to believe that Bolton was stealing the car and did not know that Bolton was misleading him. The following quoted portion, relative to his and Bolton's acts on this particular night, contains the substance of his defense:

"We rode around awhile in his car, and there was a girl in the car, and we had some whiskey, and we drank some of the whiskey and he (Bolton) asked me if I would drive his car from Barbourville to Corbin for him. I told him I didn't have any operator's license, and a little later on, he asked me again. He said there wouldn't be any danger in it, or anything. It was late then, and he said there wouldn't be any danger at all. I finally came with him, and when we got to Barbourville, we went right on out there. I didn't know where I was, but he drove right on out there without stopping. He got out of the car, and said, 'I'll be back in a minute.' He went around the house, building of some kind. I don't know where it was. He came back a couple of minutes later and said, 'Well, let's go,' so I started the car that we came up in, and went on around the other one, and went out and turned, and when I got out there he turned, he came up and stopped me and said, 'You drive this one and let me drive that one back, because it don't drive good,' so I changed cars with him, and the one I got up here, the motor was running, and when I got in the motor was running and the lights were on, and everything, so I just got in and pulled out this way. When I got to the square here, I thought he was right behind me, but he was around here somewhere (indicates out window), on this side of the Court house. It sounded

like it was a long ways off. I didn't know exactly where it was. It wasn't close, didn't sound like it, so I pulled on around, and I didn't want to get picked up for no driver's license. I was going to go back and see if I could find that fellow and give him his car back, see if he wanted to take it back out. I didn't want to take a chance on it.'' (First parenthesis ours.)

It becomes obvious that we have a man in possession of stolen property fleeing at a rapid rate of speed when pursued by officers. We have held that the possession of stolen property, unsatisfactorily explained, is alone sufficient to justify submission of the question of larceny to the jury. See Davidson v. Commonwealth, 219 Ky. 251, 292 S. W. 754; and. Tibbs v. Commonwealth, 273 Ky. 356, 116 S. W. 2d 667.

In Abshire v. Commonwealth, 281 Ky. 470, 136 S. W. 2d 567, we held that possession of stolen property is prima facie evidence of guilt of larceny, and upon proof of possession the burden shifts to defendant to explain by clear and satisfactory evidence how he came into possession of the property. See also Galloway v. Commonwealth, 293 Ky. 766, 170 S. W. 2d 594.

The jury below heard this explanation and apparently did not believe same. No doubt, the story would have been much more impressive had appellant, immediately upon his arrest, informed the officers of the state of facts as detailed from the witness stand. According to the officers, and their statements were undenied, he did not do this. It might be added here that Bolton, who was jointly indicted with appellant, died before he was arrested.

Under the facts above it was proper to submit to and we cannot usurp the prerogatives of the jury.

Wherefore, the judgment is affirmed.