## Pugh v. Commonwealth.

March 2, 1951.

Astor Hogg, Special Judge.

Francis M. Burke for appellant.

A. E. Funk, Attorney General, ,and Guy L. Dickinson, Assistant Attorney General, for appellee.

JUDGE SIMS—Reversing.

Dave Pugh was convicted of grand larceny and his punishment was fixed at confinement in the penitentiary for one year. He assigns two grounds for reversal of the judgment; 1. The court should have directed the jury to acquit him; 2. incompetent evidence was admitted over his objection.

Willie Riddle and his son, Bill, resided "two miles up Shelby Creek" in Pike County. On Saturday night, Dec. 31, 1949, some person stole three hives of honey

bees from their yard worth $20. The next morning they discovered the theft and noticed the tracks made by the vehicle which hauled away the bees showed it had mud-grip tires on the rear wheels and slick tires on the front wheels. The Riddles got into their automobile Sunday morning and drove over the dirt roads in the vicinity of their home to try and find mud-grip tire tracks leading off the road to some person's premises. They were unsuccessful.

On Monday morning they renewed their search and while in the Coal Run community, some thirty miles from their home, they saw a half ton truck parked on the side of the road which had mud-grip tires on the rear wheels and what they described as two slick tires on the front wheels. Dave Pugh soon appeared and they ascertained from him his name, where he lived and that he owned the truck. Pugh, who was a trader, said he was out to buy some calves. The Riddles started in the direction of Pugh's home and before driving a great distance notice his truck was following them. They drove across the river, sat in their parked car 200 yards from Pugh's home where they could watch his premises.

They testified that Pugh soon drove up to his home, loaded three bee hives into his truck, put an old rug over them and drove away. They immediately obtained a search warrant but no bees were found on Pugh's premises. Just as the officers finished their search Pugh drove up with two bee hives in his truck. The Riddles testified the hives Pugh had in his truck upon returning home were not the same hives he had hauled away a few hours before. Pugh only had two hives upon his return, one of which was painted and the other weather-beaten, while according to the Riddles the three hives Pugh loaded into his truck were "new lumber and had never been weather-beaten."

Mrs. Laura Cantrell and Mrs. Ervine Damron, neighbors of Pugh who had seen the hives in his garden from a distance of 200 feet, stated in their judgment the hives Pugh brought back were not the ones he formerly had in his garden, that "the ones he took away were new looking stands and the ones he brought back were old looking."

Pugh testified he bought three hives of bees

from his brother-in-law, Kerry Miller, for $15 on Dec. 27, 1949. He took them to his home and first put them under the house because it was raining, and when the weather cleared he set them out in his garden. The bees in one hive were dead and Monday afternoon, Jan. 2nd, he loaded the three hives in his truck, put an old rug over them "to steady them" and drove by his barn and left the dead hive. The two remaining hives he took to the home of Junior Hunt at Big Creek, Kentucky, to trade for a calf. Hunt wanted $15 "to boot," so they did not trade and he brought the bees back home just as the officers finished their search of his premises.

Pugh proved by Virgil Blair that the universal joint on his truck broke while he was hauling coal for him on Dec. 28th. He and Blair were repairing the truck and it could not be operated from Saturday morning until Sunday afternoon. Furthermore, he proved by his brother-in-law and sister, Proctor May and wife, that they visited Pugh and his family from Saturday afternoon until Sunday afternoon; That Pugh never left home Saturday night; that his truck was broken down and would not run.

In rebuttal the Commonwealth proved by Willie Riddle and Mrs. Frank Dotson they heard Mrs. Kerry Miller say on Jan. 2nd, the day Pugh was hauling bees in his truck, that he had that afternoon bought three hives from her husband.

Appellant insists the Commonwealth never proved the hives the prosecuting witnesses testified they saw him put in the truck were identified as the hives which were stolen, and the jury should not have been allowed to speculate or guess they were. The Commonwealth argues these hives were identified by the Riddles, therefore it was for the accused to satisfactorily explain to the jury why he had stolen property in his possession. The familiar rule in criminal law is the possession by the accused of stolen property is sufficient to take the case to the jury and to sustain a conviction. Tibbs v. Com., 273 Ky. 356, 116 S.W.2d 667, and cases therein cited.

However, in the instant case the hives which the Riddles saw Pugh load in his truck were never identified as the stolen property. The Riddles were 200 yards from these hives when Pugh was loading them. The father

testified they were not close enough to the hives to identify them and he could not say they were his hives. The son, who was the same distance away from Pugh's home as was his father, testified they looked like his father's hives, but he based that assertion on the fact that the ones Pugh was loading had never been painted and his father's hives were likewise unpainted. Since the evidence did not place the stolen property in the possession of accused and the circumstances only pointed the finger of suspicion at him rather than unerringly to his guilt, there was not sufficient evidence to take the case to the jury and a verdict of acquittal should have been directed. Meyers v. Com., 194 Ky. 523, 240 S.W. 71; Tibbs v. Com., 273 Ky. 356, 116 S.W.2d 667.

The incompetent evidence complained of was of but little importance and could not have been prejudicial. However, it is now of no moment since we have concluded the Commonwealth's evidence was not sufficient to take the case to the jury, therefore we will not take the time and space necessary to discuss the question of incompetent evidence.

The judgment is reversed for proceedings consistent with this opinion.