Jerry Lynn **DEBRULER**, Appellant

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2005–SC–000989–MR.

Supreme Court of Kentucky.

Aug. 23, 2007.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

Appellant, Jerry Debruler, was convicted of first degree kidnapping, second degree robbery, and being a persistent fel-

ony offender in the first degree. The Daviess Circuit Court sentenced him to life imprisonment and twenty years' imprisonment, respectively, to be run concurrently. He now appeals as a matter of right, raising six allegations of error. For the reasons set forth herein, we affirm.

## I. Background

The charges arise from two incidents occurring in Owensboro on the same morning. At about 7:25 a.m., C.B., a ten-year old child, left her grandmother's home to walk a short distance to school. As she walked along the sidewalk, a man grabbed her wrist and put his hand over her mouth. He told her to be quiet, then picked her up and carried her to the backyard of a vacant house. C.B. struggled and managed to free herself by slipping out of her overcoat. She ran away after looking behind her and seeing the man climb over the fence at the far end of the backyard. Beyond the fence is an alley. C.B. later told police that the man was Caucasian, but that she could not see his face or hands because he wore a mask and gloves. She did remember that he wore black work boots with yellow and black laces.

Meanwhile, Deborah Riney was exiting the Rolling Pin Bakery in Owensboro shortly after 8:00 a.m. The bakery is located less than a mile away from the scene of C.B.'s attempted abduction. When Ms. Riney arrived at the bakery's parking lot, a man was standing near the taillight of her car. He demanded her car keys; she refused. He came towards her, attempting to grab her arm or her purse. Ms. Riney screamed and ran into the street, then observed the man run away between two buildings. Two bystanders witnessed this incident and both alerted police. One followed the man until police arrived and arrested him. Both bystanders and Ms.

Riney positively identified Appellant as Riney's attacker.

Appellant was charged with both first degree kidnapping and second degree robbery, and tried before a Daviess County jury. Because Appellant admitted the robbery, the only issue for the jury was the degree of the offense. However, Appellant denied the kidnapping charge and the case against him was largely circumstantial, as C.B. had been unable to see her attacker's face.

Officers Morgan and Howard testified that two K-9 unit dogs were brought to the scene of C.B.'s attempted abduction about seven hours after the incident. Captain David Thompson brought two articles of Appellant's clothing to the scene from the police station for use in the tracking. Officer Morgan laid a sweatshirt and a jacket in the front yard of the vacant house, and his canine, Bady, was told to track the scent. Bady went around the side of the house, turned a corner, walked along the fence line, and then went to the entrance of the alley behind the house, where the scent died. Officer Howard repeated the same procedure with his canine, Denise, using Appellant's jacket. Denise also followed the trail towards the back of the house along the fence line, and then lost the scent at the entrance to the alley.

Appellant was convicted of both counts and the jury recommended a sentence of twenty years' imprisonment on the kidnapping charge and ten years' imprisonment on the robbery charge, to be served consecutively. The jury also found Appellant guilty of being a persistent felony offender in the second degree, and recommended an enhanced sentence of life on the kidnapping charge and twenty years' imprisonment on the robbery charge. The trial court accepted the jury's recommendation, though it ordered the sentences to run concurrently. This appeal followed.

## II. Analysis

First, Appellant challenges the canine scent tracking evidence on three grounds: (1) that the trial court improperly denied Appellant a *Daubert* hearing; (2) that the Commonwealth failed to lay an adequate foundation for the admission of the evidence; and (3) that the evidence was inadmissible due to a pre-trial discovery violation. Also, Appellant claims that the trial court erred when it refused to: (1) sever the kidnapping and robbery counts; (2) allow the jury to view the scenes of the crimes; and (3) direct a verdict of acquittal as to the kidnapping charge.

### A. Canine Scent Tracking Evidence: Denial of a *Daubert* Hearing

Appellant challenges the introduction of the canine scent tracking evidence on the grounds that the trial court improperly denied his request for a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Essentially, Appellant argues that canine scent tracking evidence is "scientific testimony," the admissibility of which is governed by the test set forth in *Daubert,* We disagree.

At the outset, we note that the standards for admissibility set forth in *Daubert* have been adopted in Kentucky. *Mitchell v. Commonwealth,* 908 S.W.2d 100 (Ky.1995), *overruled on other grounds* by *Fugate v. Commonwealth,* 993 S.W.2d 931 (Ky.1999). On appeal, the trial court's decisions with respect to the admission of expert scientific testimony pursuant to *Daubert* are reviewed for an abuse of discretion. *Miller v. Eldridge,* 146 S.W.3d 909, 914 (Ky.2004). As such, the trial court's rulings will be disturbed only upon a showing that the decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire &* *Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000).

The analysis set forth in *Daubert* applies to scientific expert testimony, which "implies a grounding in the methods and procedures of science." 509 U.S. at 590, 113 S.Ct. at 2795. It is designed to keep out unreliable or "pseudoscientific" expert scientific testimony that would confuse or mislead the jury, or that cannot legitimately be challenged in a courtroom. Thus, when a party seeks to introduce expert testimony, an initial determination is whether the expert is proposing to testify to scientific knowledge which "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." 509 U.S. at 592–93, 113 S.Ct. at 2796.

Because *Daubert* directs itself to the evaluation of the reliability of scientific expert testimony, it provides factors that are grounded in the scientific process to accomplish its goal. Stated otherwise, "[i]n a case involving scientific evidence, *evidentiary reliability* will be based upon *scientific validity.*" 509 U.S. at 590 n. 9, 113 S.Ct. at 2795 n. 9 (emphasis original). Accordingly, the *Daubert* analysis requires the trial court to analyze the testability of the scientific technique, whether it has been subject to peer review, the existence of scientific standards, and the level of general acceptability in the scientific community. 509 U.S. at 593–94, 113 S.Ct. at 2796–97.

Bearing in mind the purpose of *Daubert,* we turn to the issue of whether testimony from a trained dog-handler concerning the use of canine scent tracking is scientific expert testimony. Here, Officers Howard and Morgan did not testify as to any scientific technique, theory or methodology. Nor did either officer testify as to the scientific explanation of a dog's ability

to track a scent. Rather, their testimony was limited to their personal observations of the dogs' actions, and their interpretation of these actions based on experience and training. The testimony concerned the results of an investigative technique, not a scientific procedure. In short, the practice of using trained dogs to track a human scent lacks the hallmark of scientific knowledge identified by the Supreme Court, i.e., "a grounding in the methods and procedures of science." *Id.* We therefore conclude that testimony concerning the use of canine scent tracking in a particular case does not involve scientific knowledge.

■ Still, Appellant correctly points out that a *Daubert* hearing *may* apply to technical or specialized knowledge, in addition to scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999) (concluding that the *Daubert* test is a flexible one which "neither necessarily nor exclusively applies to all experts or in every case"). *See also Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky. 2000) (holding that a trial court may use a *Daubert* analysis to evaluate the reliability of any type of expert testimony, when doing so would be helpful to such a determination). Here, we are not persuaded that the *Daubert* analysis would accurately assess the reliability of canine scent tracking testimony. Contrary to Appellant's assertions, the factors identified in *Daubert* provide little guidance as to the reliability of non-scientific, experience-based knowledge such as canine scent tracking. More specifically, canine scent tracking is not a technique amenable to peer review or scientific standards and testing. Rather, it concerns the behaviors of the dog and the meanings of those behaviors, a knowledge acquired through experience and training. For this reason, foundation-

al evidence of the canine's scent tracking record; the qualifications of its handler, its training and history provide far more insight into the general reliability of the testimony than a *Daubert* analysis.

For these reasons, we conclude that testimony concerning canine scent tracking is not subject to the reliability analysis of *Daubert.* *See also State v. White,* 372 S.C. 364, 642 S.E.2d 607, 617 (Ct.App.2007) (canine scent tracking evidence is not scientific testimony and therefore a *Daubert* analysis is not required for its admission); *People v. Roraback,* 242 A.D.2d 400, 662 N.Y.S.2d 327 (N.Y.App.Div.1997) (concluding that the use of canine scent tracking is not a scientific procedure); *Pelletier v. Commonwealth,* 42 Va.App. 406, 592 S.E.2d 382, 388 (2004) (officer who handled scent-tracking dog provided sufficient empirical evidence establishing the dog's reliability, thus a scientific foundation was not necessary); *Brooks v. People,* 975 P.2d 1105 (Colo.1999) (concluding that *Daubert* standards do not apply to canine scent tracking testimony). Accordingly, the trial court did not abuse its discretion in denying Appellant's request for a *Daubert* hearing prior to the admission of the canine scent tracking testimony.

### B. Canine Scent Tracking Evidence: Foundational Requirements

While a *Daubert* hearing is not necessary to admit canine scent tracking testimony, certain foundational requirements must nonetheless be met in order to ensure reliability. Our predecessor Court set forth the foundational requirements for admitting dog-tracking, or "bloodhound" evidence, over a century ago. *Pedigo v. Commonwealth,* 103 Ky. 41, 44 S.W. 143 (1898). Citing *Pedigo* and its progeny, Appellant next argues that the foundational requirements were not met in this case.

The *Pedigo* Court first took judicial notice of the use of canines in scent-tracking: "It is a matter of common knowledge, of which courts are authorized to take notice, that dogs of some varieties (as the bloodhound, foxhound, pointer, and setter) are remarkable for the acuteness of their sense of smell and for their power of discrimination between the track they are first laid on and others which may cross it." 44 S.W. at 145. However, while acknowledging the validity of bloodhound evidence, the Court still considered the overly persuasive effect bloodhound evidence might have on a jury: "The very name by which the animal is called has a direct tendency to enhance the impressiveness of the performance." *Id.* at 145–46. In an effort to allow only the most reliable bloodhound evidence and to avoid misleading of the jury, the Court enumerated very specific and detailed foundational requirements for the admittance of such testimony:

> [I]n order to make such testimony competent, even when it is shown that the dog is of pure blood, and of a stock characterized by acuteness of scent and power of discrimination, it must also be established that the dog in question is possessed of these qualities, and has been trained or tested in their exercise in the tracking of human beings, and that these facts must appear from the testimony of some person who has personal knowledge thereof. We think it must also appear that the dog so trained and tested was laid on the trail, whether visible or not, concerning which testimony has been admitted, at a point where the circumstances tend clearly to show that the guilty party had been, or upon a track which such circumstances indicated to have been made by him.

*Id.* at 145.

Kentucky courts have strictly imposed the foundational requirements set forth above since the *Pedigo* case. *See Smith v. Commonwealth*, 563 S.W.2d 494, 496 (Ky. App.1978) ("With respect to bloodhounds, this Court has long imposed the requirement that an exacting foundation be laid before the evidence is admissible."). *See also Blair v. Commonwealth*, 181 Ky. 218, 204 S.W. 67, 68 (1918) ("The [*Pedigo* ] rule may now be said to be thoroughly established in this jurisdiction."); *Brummett v. Commonwealth*, 263 Ky. 460, 92 S.W.2d 787 (1936); *Daugherty v. Commonwealth*, 293 Ky. 147, 168 S.W.2d 564 (1943).

■ Here, the Commonwealth provided sufficient foundation for admission of the testimony concerning canine scent tracking by Officers Howard and Morgan. Both officers testified that Bady and Denise were purebred German Shepherds, and produced certificates of their bloodline. As to the dogs' training and qualifications, Officers Howard and Morgan provided evidence that the dogs had been trained at an Indiana dog-training facility. According to Officer Howard's testimony about Denise, she had been certified in tracking by the Owensboro Police Department and is re-certified every year following thirty-two hours of additional training. Furthermore, she completes practice runs every week. Officer Morgan testified that Bady has been certified by the United States Police Canine Association and competes twice a year to maintain this certification. Like Bady, she completes practice runs on a weekly basis.

Both officers provided testimony concerning the circumstances of the tracking in this case. The dogs were taken to the scene and guided by trained handlers with whom the dogs were used to working. Bady and Denise were given a scent from clothing taken from Appellant once he was in custody. The dogs were placed in the yard of the vacant house, where C.B. stat-

ed that she was grabbed from behind. Both dogs detected a scent and followed it along the fence line to the alleyway, exactly the path indicated by C.B.

Nonetheless, Appellant argues that the testimony should have been excluded because the clothing taken from Appellant was not properly preserved, and because the scene of the crime was contaminated before Bady and Denise arrived by the passage of time and the presence of other investigating officers. Appellant points to the testimony of Captain Thompson who testified he brought Appellant's clothing from the police station to the scene of the crime. However, on cross-examination, Captain Thompson could not remember whether he took the clothing directly from Appellant or from somewhere "in the vicinity" of the criminal investigations division office. Appellant also points to the fact that several hours passed between the time of the crime and the arrival of the dogs, and the fact that several investigating officers walked through the yard in the interim.

The passage of time and the presence of other officers at the scene do not render this testimony inadmissible. No evidence was presented that Bady and Denise were ineffective because the scent had been lying over seven hours, nor was any evidence presented that the dogs could not distinguish between the desired track and other crossing tracks. In fact, the officers both specifically testified that the dogs could follow trails several hours old, and that both dogs displayed the ability to discriminate among multiple, overlapping tracks. We also note that, in *Bullock v. Commonwealth*, 249 Ky. 1, 60 S.W.2d 108 (1933), bloodhound evidence was properly admitted even though the dogs were brought to the scene over eighteen hours after the crime occurred. *See also Meyers v. Commonwealth*, 194 Ky. 523, 240 S.W.

71 (1922) (bloodhound evidence admitted where dog arrived at scene seven hours after crime). The fact that a dog's ability to track *might* be adversely affected by the passage of time or the presence of multiple scents does not render this testimony unreliable. Rather, it goes to weight and is a point to be made during cross-examination, which is precisely what occurred in this case.

Likewise, Captain Thompson's testimony did not erode the foundation laid by the Commonwealth. While Captain Thompson could not specifically remember where in the police station he had obtained Appellant's clothing, Appellant identified the clothing himself at trial. Thus, there was no question that the clothing provided to Denise and Bady belonged to Appellant. Furthermore, there was no evidence presented that the articles of clothing were in any way contaminated during the trip from the police station to the scene of the crime. *Cf. Bullock v. Commonwealth*, 241 Ky. 799, 45 S.W.2d 449 (1932)(foundational requirements for admission of canine scent tracking evidence not satisfied where testimony revealed that scene of crime had not been guarded prior to arrival of bloodhounds and undetermined number of persons transgressed the area). Again, any possibility that the dogs' ability to track had been compromised goes towards the weight of the testimony, not its admissibility.

The Commonwealth satisfied the foundational requirements set forth in *Pedigo* in this case. Accordingly, the trial court did not err in allowing canine scent tracking testimony from Officers Morgan and Howard.

### C. Canine Scent Tracking Evidence: Discovery Violation

■ Appellant furthermore argues that he was not provided the dogs' training

records in discovery. An agreed discovery order in this case ordered the Commonwealth to provide "all discovery required by Kentucky Rules of Criminal Procedure (RCr) Rule 7.24." On the morning of trial, defense counsel moved to exclude all evidence of the dogs' training on this basis. The motion was denied as untimely, as was defense counsel's request for a continuance. Defense counsel renewed the motion the following day, and it was again denied. The documents were furnished to defense counsel later on the second day of trial, prior to the testimony of Officers Morgan and Howard.

Upon review of the matter, we find no error. RCr 7.24(1)(b) requires the disclosure of "results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case." Documents concerning the dogs' training cannot be classified as the results or reports of a physical or mental evaluation, or of a scientific test or experiment. Moreover, we cannot accept any assertion that defense counsel was ambushed, unduly surprised, or otherwise prejudiced by the admission of the dogs' training certificates. By virtue of other documents furnished through discovery, defense counsel was well aware that the Commonwealth would be presenting evidence of dog tracking, but failed to request the desired documents prior to trial. Accordingly, the trial court did not err in refusing to grant a continuance or to exclude the testimony, where no violation of the agreed discovery order occurred.

### D. Severance of Charges

Appellant contends that the trial court erred in refusing to sever the kidnapping and robbery charges. RCr 6.18 allows joinder of offenses where "the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." The decision to sever charges lies within the discretion of the trial court and will be overturned only where an abuse of discretion has occurred. *Cannon v. Commonwealth*, 777 S.W.2d 591, 596–97 (Ky.1989). In ruling on a motion to sever, a trial court should consider the extent to which the evidence of one offense would be admissible at the trial of the other offense. *Commonwealth v. English*, 993 S.W.2d 941, 944 (Ky.1999).

Joinder of offenses was proper in the case at bar. It was the Commonwealth's theory of the case that Appellant attempted to abduct C.B., and then attempted to rob Ms. Riney of her car in an effort to flee the area. This attempted flight certainly serves as circumstantial evidence of Appellant's guilt with respect to the kidnapping charge. Conversely, the attempted abduction established Appellant's motive for robbing Ms. Riney. Furthermore, it should be noted that the two incidents occurred within the span of about forty-five minutes and less than a mile apart. Joinder is proper where the two crimes are closely related in character, circumstance and time. *Commonwealth v. Collins*, 933 S.W.2d 811, 816 (Ky.1996).

In this case, there was significant evidence upon which to conclude that the two offenses were related criminal acts. Moreover, under such circumstances, we find no prejudice to Appellant and, therefore, severance pursuant to RCr 9.16 was not required. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion to sever the charges.

### E. Jury View of the Crime Scenes

Appellant argues that the trial court abused its discretion in refusing his motion for a jury view of the scene. Kentucky Revised Statutes (KRS) 29A.310(3)

permits a jury to view the place where the charged offense was committed when deemed necessary by the trial court. The decision lies within the sound discretion of the lower court. *Tungate v. Commonwealth*, 901 S.W.2d 41, 44 (Ky.1995).

The Commonwealth produced numerous photographs of both the scene of the robbery and the scene of the kidnapping. Several witnesses explained the events by use of these photographs and, additionally, maps. By virtue of these visual aids, the jury was adequately apprised of the physical nature of the two scenes, and their proximity to one another. *See Sholler v. Commonwealth*, 969 S.W.2d 706, 711(Ky.1998). There was no error.

## F. Directed Verdict

Appellant's final allegation of error is that the trial court erred in failing to direct a verdict of acquittal on the kidnapping charge. Appellant contends that the canine scent tracking evidence presented through the testimony of Officers Morgan and Howard was not corroborated and, therefore, insufficient alone to support a conviction. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). "If the totality of the evidence is such that the trial judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient, albeit circumstantial," and the case should be submitted to the jury. *Hodges v. Commonwealth*, 473 S.W.2d 811, 813–14 (Ky.1971). Upon a thorough review record, we conclude that there was sufficient evidence upon which to submit this case to the jury.

In this case, the canine scent tracking evidence was not the only circumstance pointing towards Appellant's guilt. C.B. identified her abductor as a Caucasian male. Furthermore, she told police the man wore black, steel toe work boots with black and yellow shoelaces, and she identified Appellant's boots at trial as her abductor's. She also stated that he wore a denim shirt or jacket. Appellant was eventually arrested wearing a denim jacket. The proximity in both time and place of the kidnapping to the robbery, which Appellant admitted, also pointed towards his guilt. Finally, after being apprehended following the robbery, Appellant lied to detectives about where he had been just before approaching Ms. Riney. At trial, Appellant offered no credible reason for this fabrication or any alibi for the period of time when the kidnapping occurred. Coupled with Appellant's evasive and vague responses on the stand, the jury could very reasonably conclude that Appellant wished to hide his whereabouts during this time period.

The circumstances enumerated above, when considered together with the canine scent tracking evidence, created a sufficiently detailed picture of the crime upon which a jury could find guilt beyond a reasonable doubt. *Elmore v. Commonwealth*, 520 S.W.2d 328, 331–32 (Ky.1975). There was no error.

## III. Conclusion

For the foregoing reasons, the judgment of the Daviess Circuit Court is affirmed.

All sitting.

LAMBERT, C.J., CUNNINGHAM, MINTON, NOBLE, SCHRODER, SCOTT, JJ., concur.